JENNIE TAYLOR, Administratrix of the Estate of ALBERT P. TAYLOR, v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

Division Two, March 24, 1914.

1. **HYPOTHETICAL QUESTION: Results of Injuries: Province of Jury.** A hypothetical question asked of a doctor, to wit, whether the injuries detailed as arising from the accident might, could or *would* have resulted in the condition testified to by the doctor, was not erroneous as invading the province of the jury.

2. ——: ——: ——: **Later Injury.** Where the evidence showed that the plaintiff was suffering from paralysis after the injury in question and long before his eye was blackened by a blow, and that the paralytic condition grew no worse after the blow, a question asked of a doctor was not improper which related hypothetically the details of a fist fight occurring after the alleged negligent injury by defendant and required the doctor to say whether plaintiff's subsequent condition "might, could or would have been the result of that blow, or it might, could or would have been the result of the injuries" suffered through defendant's negligence. As the question is worded it is perhaps an attempt to have the witness say which was the more likely cause, and in that regard approaches the danger zone, but under the evidence, and considering the answer made, there was no error.

3. **NEGLIGENCE: Instructions: Excessive Speed of Car: Humanity Rule.** Instructions on excessive speed and on the humanitarian doctrine are held not to be inconsistent in this action for damages for personal injuries suffered in a collision with defendant's street car.

4. ——: **Evidence: Humanity Rule.** Evidence *held* sufficient to take to the jury the question whether defendant's servants, after they had discovered, or should have discovered, plaintiff's

peril, could have stopped their car, with safety to the passengers, in time to avoid collision.

5. ——: ——: **Excessive Speed of Car.** Evidence *held* sufficient to take to the jury the question whether defendant's street car, which injured the plaintiff, was negligently operated at a rapid rate of speed.

6. ——: **Plaintiff's Own Evidence: Humanity Rule.** Where plaintiff testified: that when he saw defendant's street car the front feet of the horses drawing the wagon in which he rode were between the rails and the car was sixty or seventy yards distant; that he thought there was plenty of time to cross and therefore did not try to jump (and in this he is corroborated both by the driver of the wagon and by another man riding therein); that at the time he thought the wagon was traveling about six miles an hour and had about seventeen feet to go in order to clear the track; that he thought the car was running from twenty-five to thirty miles an hour and that it had from 180 to 210 feet to go; that he then turned away and when his attention was called by a shout the car was almost upon the wagon, and before he could change position the collision occurred, and where there was evidence tending to show that the motorman was negligent, it cannot be said that plaintiff's own testimony shows that his own negligence was the proximate cause of the accident so as to defeat a recovery under the humanity rule. To bar recovery in such cases it must appear that the plaintiff negligently entered the danger zone too late for defendant to save him by exercising the care required under the situation.

7. ——: ——: **Contributory Negligence.** Nor can it be said that plaintiff, who was not the driver of the team and had no control over it, was guilty of contributory negligence which would as a matter of law preclude a recovery on the ground of the car's excessive speed.

8. ——: **Contributory: Not Pleaded, and Not Proved by Plaintiff's Evidence: Argument of Counsel.** In the absence of a plea of contributory negligence, and in the absence of such evidence upon the part of plaintiff as would justify the court in finding him guilty of contributory negligence as a matter of law, the defendant cannot avail itself of such defense even though plaintiff's evidence *tends* to prove it. Nor in such case can defendant's counsel argue contributory negligence to the jury.

9. **APPEAL: Motion for New Trial: Remarks of Counsel.** In order to be matters for appellate review, errors asserted to have been made by opposing counsel in his remarks to the jury must be preserved in appellant's motion for a new trial.

10. REVIVOR: Judgment Assigned Before Litigant's Death. The administratrix is the proper party to be substituted for a litigant who has died pending an appeal from a judgment in his favor, even though the litigant had assigned his judgment.

Appeal from Jackson Circuit Court.—*Hon. W. O. Thomas*, Judge.

AFFIRMED.

*John H. Lucas, Piatt & Lea* and *T. R. Marks* for appellant.

(1) The petition charges last chance and excessive speed, repugnant causes of action. (a) The evidence fails to sustain either. Therefore, (b) objections to the evidence and (c) demurrers to the evidence should have been sustained. (a) Gabriel v. Railroad, 130 Mo. App. 651; Krehmeyer v. Transit Co., 220 Mo. 639; Grout v. Electric Ry., 125 Mo. App. 552; (b) Rinard v. Railroad, 164 Mo. 284; (c) Kinlen v. Railroad, 216 Mo. 158; Moore v. Lindell Ry. Co., 176 Mo. 532; Wallack v. Transit Co., 123 Mo. App. 167; Guiney v. Electric Co., 167 Mo. 595; Mockowik v. Railroad, 196 Mo. 570; Gettys v. Transit Co., 103 Mo. App. 564; Hudson v. Railroad, 101 Mo. 13; Corcoran v. Railroad, 105 Mo. 399; Weller v. Railroad, 120 Mo. 635; Holland v. Railroad, 210 Mo. 350; Schmidt v. Railroad 191 Mo. 215; Kenney v. Railroad, 105 Mo. 284; Laun v. Railroad, 216 Mo. 563; Holmes v. Railroad, 190 Mo. 105; Markowitz v. Railroad, 186 Mo. 359; Hogan v. Railroad, 150 Mo. 54; Reno v. Railroad, 180 Mo. 486; Eppstein v. Railroad, 197 Mo. 733; Van Bach v. Railroad, 171 Mo. 346; Boyd v. Railroad, 105 Mo. 381; Guyer v. Railroad, 174 Mo. 351; Roenfeldt v. Railroad, 180 Mo. 565; Porter v. Railroad, 199 Mo. 99. (2) The medical experts, over defendant's objection, were permitted to invade the province of the jury in answering improper hypothetical questions. This is

error.  Glasgow v. Railroad, 191 Mo. 347; Smart v.
Kansas City, 208 Mo. 203; Sutter v. Kansas City, 138
Mo. App. 105; Baehr v. Casualty Co., 133 Mo. App.
541; Thomas v. Railroad, 125 Mo. App. 138.
(3) Plaintiff's instruction one authorizes recovery un-
der the humanitarian rule; No. 3 on account of ex-
cessive speed.  Both are argumentative, illegal and in-
consistent.  Gabriel v. St. Ry., 130 Mo. App. 651;
Krehmeyer v. Transit Co., 220 Mo. 639; Grout v. Elec-
tric Co., 125 Mo. App. 552; McKenna v. Railroad, 54
Mo. App. 161; White v. Railroad, 202 Mo. 555; Cyt-
ron v. Transit Co., 205 Mo. 716; Bunyan v. Railroad,
127 Mo. 18; Williams v. Railroad, 114 Mo. App. 8.
(4) Defendant's refused instructions Nos. 4, 5, 7, 9,
10, 11, 12, 13 and 15 are proper under the evidence of
plaintiff, the petition and the instructions given for
plaintiff.  Moore v. Lindell Ry. Co., 176 Mo. 532; Deane
v. Transit Co., 192 Mo. 584; Mockowik v. Railroad,
196 Mo. 570; Wallack v. Transit Co., 123 Mo. App.
167; Tillman v. Transit Co., 102 Mo. App. 553; Allen
v. Transit Co., 183 Mo. 424; Pim v. Transit Co., 108
Mo. App. 716; Ramp v. Railroad, 133 Mo. App. 703;
Hebeler v. Railroad, 132 Mo. App. 551; Engelking v.
Railroad, 187 Mo. 164; Collins v. Fillingham, 129 Mo.
App. 344; Charleton v. Railroad, 200 Mo. 439; Van
Dyke v. Railroad, 130 S. W. 8; Bunyan v. Ry. Co.,
127 Mo. 18; Evans v. Railroad, 178 Mo. 517.    (5)
Plaintiff testified he saw the car approaching, knew
the speed at which it was coming, knew he could avoid
it in safety and made no effort so to do.  The court
erroneously refused to permit defendant to argue this
evidence and made erroneous comments in the pres-
ence of the jury as to the legal effect of the same.
Moore v. Lindell Ry. Co., 176 Mo. 532; Rose v. Kansas
City, 125 Mo. App. 231.    (6) Counsel for plaintiff,
over defendant's objection, went outside of the rec-
ord and was guilty of misconduct in final argument of
the case.  Stetzler v. Railroad, 210 Mo. 704; Rose v.

Kansas City, 125 Mo. App. 231; Neff v. Cameron, 213 Mo. 369; Haynes v. Trenton, 108 Mo. 133; Tuck v. Traction Co., 140 Mo. App. 335; Eppstein v. Railroad, 197 Mo. 738. (7) Every action shall be prosecuted in the name of the real party in interest. R. S. 1909, sec. 1729. Albert P. Taylor did not enlist for the war but for first engagement only. As appears by the abstract of record in this cause he obtained judgment on the 28th day of October, 1909, against the defendant in the Circuit Court of Jackson County, Missouri, and thereafter on the 2nd day of November, 1909, made written conveyance of said judgment upon the margin of the record thereof, duly attested by the clerk of the court, said conveyance and attestation being in words and figures as follows, to-wit: ''Kansas City, Missouri, Nov. 2, 1909. For value received, I hereby sell, assign and transfer this judgment to Charles E. Small. (Signed) Albert P. Taylor. Attest: Oscar Hochland, Clerk, By D. M. McClanahan, D. C.'' This assignment is in accordance with Sec. 2156, R. S. 1909, and as by said statute provided vests the legal title to such judgment and cause of action absolutely and wholly in Charles E. Small. Bank v. Bulkley, 68 Mo. App. 332. An assignment and transfer of the judgment in the foregoing manner transfers the cause of action to the assignee and vests in him the right to maintain all actions and proceedings therein and thereon in his own name. Bick v. Robbins, 131 Mo. App. 670; Secs. 2156, 2159, R. S. 1909.

*Gage, Ladd & Small* for respondent.

(1) Plaintiff's petition, which charges the negligence of defendant to consist of a negligently rapid rate of speed, of negligently failing to stop the car and of negligently permitting same to strike the wagon in which the plaintiff was riding, does not contain allegations that are contradictory or inconsistent.

White v. Railroad, 202 Mo. 439. (2) Instructions 1
and 3 given for plaintiff follow the petition and are
not inconsistent with each other and were properly
given. White v. Railroad, 202 Mo. 439; Shipley v.
Railroad, 144 Mo. App. 7. (3) Defendant's conten-
tion that plaintiff's instruction No. 1 was erroneous,
because it said nothing about regard for the safety of
passengers and operatives in stopping the car, is with-
out merit, because "ordinary care" necessarily in-
cludes such care as would be consistent with the safety
of the passengers and operatives, and, furthermore,
plaintiff's expert Hill's testimony was based on due
regard to the safety of the passengers and operatives
and the jury could not have been misled. Bunyan v.
Railroad, 127 Mo. 12. (4) There was abundant evi-
dence of defendant's negligence and that it caused the
injury complained of. White v. Railroad, 202 Mo. 439;
Shipley v. Railroad, 144 Mo. App. 7. (5) On the un-
disputed evidence of the defendant, it was guilty of
negligence as a matter of law either in running too
fast or stopping too slow, which was the proximate
cause of plaintiff's injury. Shipley v. Railroad, 144
Mo. App. 7. (6) The negligence, if any, of Jaggard,
the owner of the team, and of Ollie King, the driver,
cannot be imputed to the plaintiff. Agnew v. Rail-
road, 125 Mo. App. 587; Zaloutchin v. Railroad, 127
Mo. App. 577. (7) Plaintiff himself was not guilty of
contributory negligence as a matter of law. (8) De-
fendant having failed to stand on its demurrer to
plaintiff's testimony, and having introduced evidence
on its own behalf, the whole testimony, that of defend-
ant as well as plaintiff, must be considered in deter-
mining whether plaintiff was guilty of contributory
negligence as a matter of law. (9) The answer con-
taining simply a general denial and no plea of contrib-
utory negligence, and the plaintiff on all the testimony
not being guilty, as a matter of law, of contributory
negligence, that issue could not be submitted to the

jury and defendant's instructions referring to plaintiff's contributory negligence were properly refused. Collins v. Fillingham, 129 Mo. App. 340; Zaloutchin v. Railroad, 127 Mo. App. 577; Schullze v. Railroad, 32 Mo. App. 440; Brown v. Railroad, 31 Mo. App. 675; Thorpe v. Railroad, 89 Mo. 650; Petty v. Railroad, 88 Mo. 306; Craine v. Railroad, 87 Mo. 588; Taylor v. Railroad, 26 Mo. App. 336; St. Clair v. Railroad, 29 Mo. App. 76. (10) The driver's negligence, if any, not being imputable to the plaintiff and there being no contributory negligence in the case, the court had a right to so instruct the jury, as it did do at the end of plaintiff's first instruction. (11) There being no question of contributory negligence in the case, it is not necessary to invoke the so-called "humanitarian doctrine" to avoid the consequences of contributory negligence. The only question in the case is, was the defendant guilty of negligence causing or directly contributing to the injury? (12) But even if the plaintiff's case depended upon the humanitarian doctrine, it is settled in this court that such doctrine is not based upon and does not necessarily admit negligence on the part of the plaintiff, but is also applicable to cases where plaintiff is free from negligence, or what is the same thing, to cases where the plaintiff is not guilty of negligence as a matter of law, and there is no plea of contributory negligence. Shipley v. Railroad, 144 Mo. App. 7. (13) The objections to the answer of Dr. Stemen that he thought plaintiff's injuries were permanent will not avail defendant anything. 1st. Because there was no objection to the question and the answer was repeated at the request of the learned counsel for defendant. 2d. Because the answer related to a scientific fact to which experts are competent to testify. Koenig v. Railroad, 173 Mo. 698. (14) There is nothing in defendant's objection that the hypothetical question to Dr. Chambliss contained the word would as well as might and could cause, etc. The

Supreme Court has expressly so ruled. Taylor v. Railroad, 185 Mo. 239. There is no other cause to which plaintiff's paralysis could be attributed, and therefore, if there had been any error in the question complained of it would have been harmless. (15) The learned counsel of defendant is in error when he complains of the argument of plaintiff's attorney. There was nothing wrong with said argument. (16) The court properly rebuked the defendant's learned counsel during his argument. He tried to get the jury to give instructions to itself which the court had refused to give them, and the court finally stopped him as it had a right to do. (17) There is nothing in appellant's showing in opposition to administratrix's motion which should prevent the substitution as prayed for by her. If the judgment were to be affirmed, execution upon it, if any, would, by the express provisions of the statute, necessarily issue in her name, with an endorsement by the clerk thereon that it was to the use of Mr. Small, the assignee of the judgment. R. S. 1909, secs. 2136, 2158; Welch v. St. Louis, 12 Mo. App. 516. The sole plaintiff, appellee, having died, his administratrix is the proper person to be made party in his stead. The appellant says in its answer that if this judgment were reversed and the cause remanded it would necessarily proceed in the name of Small, the assignee. The administratrix disputes this because there never has been any assignment or transfer of the cause of action to Mr. Small; the assignment was simply of the judgment, and was only intended as security, as hereinbefore shown, and this cause of action being one which survives to the administratrix under the provisions of section 5438, she has, notwithstanding the assignment, a very large interest in the judgment. But even if the effect of the assignment of the judgment were to transfer the cause of action, the suit need not necessarily proceed, after such assignment, in the name of the assignee. It may still be

prosecuted in the name of the assignor or his personal representative. R. S. 1909, sec. 1924. Under this provision the suit may, if the assignee wishes, and the assignor does not object, proceed in the name of the assignor, and, as this court has said: "This is, however, a matter between the assignor and assignee . . . it is no concern of the defendant." Renfro v. Prior, 25 Mo. App. 402. And the Supreme Court, in a case where there had been an assignment of the cause of action, and which afterwards proceeded in the name of the original plaintiff, said: "If the plaintiff saw fit to waive his right to demand an indemnifying bond for his own protection, and allow the suit to be proceeded with in his name, it is not a matter of which defendant can complain." Asher v. Railroad, 89 Mo. 116; Bank v. Wickham, 23 Mo. App. 666; State ex rel. v. Pitman, 131 Mo. App. 299; Smith v. Phelps, 74 Mo. 598; State ex rel. v. Philips, 97 Mo. 331. The same rule prevails in other jurisdictions: Moss v. Shear, 30 Cal. 468; Hestres v. Brennan, 37 Cal. 385; Peters v. Gallagher, 37 Mich. 406; Moon v. Harder, 38 Mich. 566; Jordan v. Ping, 32 Iowa, 64; Snyder v. Phillips, 66 Iowa, 481; Kreuger v. Sylvester, 100 Iowa, 647; Investment Co. v. Hughes, 89 Fed. 182; Lowell v. Parkinson, 4 Utah, 34; Johnston v. King, 88 Wis. 211; Sinclair v. Stanley, 69 Tex. 718. Therefore, both the administratrix of the assignor and the assignee having expressed their desire that the case proceed in the name of the administratrix, the appellant is not in a position to urge that the case proceeded in the name of the assignee, because it does not lie in the appellant's mouth to say anything about it.

WILLIAMS, C.—This is a suit to recover damages for personal injuries received by one Albert P. Taylor in a collision with one of defendant's cars while said Taylor was crossing Nineteenth street on Cherry street in Kansas City, Missouri, about eight

p. m., September 20, 1907. Plaintiff recovered judgment in the trial court in the sum of $6250, and the defendant perfected an appeal to the Kansas City Court of Appeals. After the appeal was taken, plaintiff died. The case was revived in the name of Jennie Taylor, as administratrix of his estate. In an opinion written by the Kansas City Court of Appeals the judgment was affirmed, but one of the judges of said Court of Appeals deeming its decision contrary to previous decisions of the Supreme Court, the cause was duly certified and transferred here.

That portion of the plaintiff's petition charging negligence is as follows:

"Defendant, through the negligence and unskilfulness of its officers, agents, servants and employees in running, conducting and managing a car of the defendant, which was being moved by the defendant at an unusual and rapid rate of speed along said track while in charge of its said officers, agents, servants and employees, negligently and carelessly ran the said car into, upon and against the wagon in which plaintiff was riding, as aforesaid, with great force and violence.

"That the officers, agents, servants, and employees of the defendant in charge of said car, and who were then engaged in running, conducting and managing said car, saw, or by the exercise of ordinary care on their part might have seen, said plaintiff and become aware of the danger to which he was exposed while crossing said Nineteenth street, and while said wagon was on said track, crossing the same, in ample time to have stopped said car before it struck said wagon, as aforesaid, and thus have avoided injuring plaintiff, but that said officers, agents, servants, and employees of said defendant so in charge of said car, negligently failed to stop said car and negligently caused and permitted the same to strike said wagon as aforesaid, whereby plaintiff was violently knocked down

and against said wagon and gig and out of said wagon to the street," etc.

The answer was a general denial.

The evidence tended to establish the following facts: Plaintiff, thirty-three years of age, in good health, at about 8 p. m., September 20, 1907, together with four companions came out of a restaurant on the southeast corner of Nineteenth and Cherry streets in Kansas City, Missouri, and got into a farm wagon which had been left standing on Cherry street a few feet south of Nineteenth street, and started to drive north on the east side of Cherry street across said Nineteenth street, intending to go to a certain freight depot where they were expecting to receive a shipment of race horses. The wagon was an ordinary farm wagon with its bed and sideboards, twenty-six inches deep. On the front part of the wagon bed was a spring seat, upon which were seated Ollie King, the driver of the team, and George Wilson. Jim Allen was standing up in the wagon bed, just back of the spring seat. Back of Allen a driving cart was resting with its axle across the top of the wagon bed and one half of its wheels extended above the wagon bed. Back of the driving cart a man by the name of Jaggard, the owner of the team and wagon, was seated or standing and just back of Jaggard, and near the rear end of the wagon bed, plaintiff was standing.

On the southwest corner of this crossing a two-story building stood flush with the sidewalk, and on the same corner, between the curb and sidewalk, was a gas light. There was also a gas light on the northeast corner of this crossing. Nineteenth street, at this place, was forty-nine and one half feet wide from property line to property line, thirty-four feet wide from curb to curb, and was fourteen feet from the south curb to the south rail of defendant's track. About one hundred and eighty-eight feet west of the Cherry street crossing an alley crossed Nineteenth

street. Nineteenth street at this alley was one foot, three and one-half inches higher than at the Cherry street crossing, but Nineteenth street was practically level for at least a distance of four blocks west of Cherry street. Defendant's cars on Nineteenth street always ran eastward.

Plaintiff testified that as the wagon started across Nineteenth street he looked first to the east but his view was obstructed by the building on the southeast corner of the crossing. He then turned and looked toward the west and saw the car coming from the west which looked to be sixty or seventy-five yards away; that at this time the horses were on the track between the two rails; that it was about seventeen feet to the horses' heads from where he was standing in the back end of the wagon; that after looking at the car he thought the wagon had plenty of time to get across ahead of it; that the car did not slacken its speed before it hit the wagon; that the car was running twenty-five or thirty miles an hour; that the team was traveling about six miles an hour; that he was standing between the shafts and the two wheels of the cart and did not know whether he had plenty of time to get out of the wagon or not but that he did not think it was necessary to jump out and did not make any effort to get out; that after looking at the car he turned toward Mr. Jaggard and was talking to him and again looked around in the direction of the car and the light of the car was right onto the wagon, and the collision immediately occurred, the car striking the wagon near one of the rear wheels; that just before the car struck the wagon, Mr. Jaggard halloed to the driver, "Look out there" and that the driver hit the horses with the whip causing them to jump in order to clear the track. Plaintiff was knocked unconscious by the collision and did not regain consciousness until some time later in the City Hospital. Plaintiff remained in the City Hospital six days and was then removed to the Bethany

Hospital in Kansas City, Kansas, where he remained about twenty days.

Plaintiff's evidence tended to show that before the accident he was a strong, healthy man; that from the accident he received a cut on the back of the head and over his eye which had to be sewed up by a surgeon. For several days after being taken to the hospital he was unconscious and incoherent in his speech and was suffering from concussion of the brain and partial paralysis of his right arm, right leg and right side. Other injuries which were were unimportant are also mentioned. Evidence also tended to show that plaintiff was permanently injured; that the muscles of his right limb were atrophied and that the power and motion of his right side and right limbs were impaired about one-half. That it was nine months after the injury before plaintiff did any work and from that time on worked about one-half the time doing light work such as driving livery teams, hitching, unhitching and currying horses and worked some in St. Louis driving a team to an asphalt wagon.

The evidence on the part of plaintiff showed that a car of this kind, going fifteen miles an hour, could be stopped within a distance of fifty or sixty feet taking into consideration the safety of the passengers. Defendant's evidence in this regard tended to show that it would take one hundred feet in which to stop the car. Two of plaintiff's witnesses testified that while standing on the southwest corner of Cherry and Nineteenth streets they saw the accident; that they first say the car near the alley west of Cherry street; that it was going "fast" and did not lessen its speed before it hit the wagon. One of these witnesses described the speed of the car as "awful fast." A city ordinance fixing the maximum speed of street cars for the vicinity of the accident provided that "all cars shall be run at all times and places at a reasonable rate of speed under the particular circumstances, and

in no event at a greater rate of speed than fifteen miles an hour.'' Some of plaintiff's witnesses testified that the car ran nearly to the alley east of Cherry street after striking the wagon and before coming to a stop. Defendant's eyewitnesses testified that the car went about a car's length beyond the wagon and then stopped. The motorman was knocked unconscious by the collision but did not receive serious injuries. One of the men in the wagon was thrown through the front end of the car by reason of the impact. The driver of the wagon and Mr. Jaggard, owner of the team, testified that they first saw the car when it was near the alley west of Cherry street and that they thought they had time to clear the track before the car reached the crossing, and that the team was traveling 3¼ miles per hour. Both the driver and Jaggard were knocked unconscious by the collision but both recovered.

Defendant's evidence tended to show that the car was running at a speed of about fifteen miles an hour, and that the car was geared for eighteen miles per hour as maximum speed. One of defendant's witnesses testified that he was a passenger and that the car was running at the usual speed when it struck the wagon and that he did not notice any change in the speed of the car just before it struck the wagon. One of defendant's witnesses (a passenger standing in the front vestibule of the car at the time of the accident) testified that he first noticed the horses when the car was about a car's length and a half from the team and that about this time the motorman threw on the brakes, turned off the current and dropped down to save himself. Another passenger standing in the front vestibule testified for defendant that he first saw the team when they were about ten feet from the car; that the car was running at common speed and the horses were walking and that the motorman got the brakes on about the time the car hit the wagon.

The motorman testified, for defendant, that he first saw the team going over the track when the car was about sixty feet west of the team, that at that time the car was traveling fifteen miles an hour; that when he saw the team he threw off the power; tried to set the brakes; rang the bell and then the car struck the wagon and the impact rendered him unconscious; that he regained consciousness that night at the City Hospital and was not seriously injured; that just before the accident he was running his car down the street paying strict attention to business, looking down the track; that the hind legs of the horses were just about to the north rail when he first noticed the team; that the car was thirty-two feet long and that at the speed at which it was going it could have been stopped in three car lengths. The evidence tended to show that the motorman was not a skilful motorman, his experience in runnings cars being limited to about two and one-half months work as ''extra man.'' During this time, he was not on the defendant company's ''regular list'' but was on the ''extra list,'' making extra trips or regular trips when the regular motormen laid off for any purpose. As extra man, however, he worked nearly full time.

One of defendant's witnesses testified that at the time of the accident he was looking out of a second-story window above the restaurant on the southeast corner of Nineteenth and Cherry streets and saw the car when it was about thirty or forty feet from where the wagon attempted to cross, and that the horses were about ten or fifteen feet from the car track and that the car struck the wagon about ''middle-ways.''

There was some evidence to the effect that before the accident plaintiff had engaged in some fist fights while he lived at Slater, Missouri, and that several months after the injury plaintiff returned to Slater, Missouri, and in an encounter in a saloon there received a black eye. Plaintiff admitted this on cross-

examination, but stated that by reason of the injuries received in the collision he was unable to defend himself and that the fight ended with the one blow which he received and that the only result of the fight was the black eye which caused him to remain at home for a day or two, as he says, to keep people from seeing his black eye.

Plaintiff's instructions numbered one and three, of which defendant complains, are as follows:

"1.   The court instructs the jury that it was the duty of defendant's motorman in charge of the car mentioned in the evidence, to exercise ordinary care to keep a vigilant watch-out ahead for persons and vehicles upon or approaching the track upon which the car in question was running at the crossing of Nineteenth and Cherry streets; if, therefore, you believe from the evidence that the plaintiff was, at the time and place in question, in a position of imminent peril of being struck by the car mentioned in the evidence by reason of the fact that the team or the wagon attached thereto in which he was riding was upon the railroad track or upon Nineteenth street and approaching the track upon which said car was running, and that the motorman saw him or said wagon and the persons therein in such position of danger, if any, or, by the exercise of ordinary care, could have so seen it or them in time to have stopped said car by the exercise of ordinary care and thus have avoided striking the wagon and injuring the plaintiff but negligently and carelessly failed to do so, and if you further believe from the evidence that by reason of the foregoing careless negligent acts of the said motorman, if you find them to have been careless and negligent, the wagon in which plaintiff was riding was struck and plaintiff was thrown out of the same and injured, then your verdict must be for the plaintiff, even though you believe and find from the evidence that the plaintiff or those with whom he was riding, or those who

were driving said wagon, negligently placed him and themselves in dangerous proximity to the street car mentioned in the evidence at said crossing of Cherry and Nineteenth streets.''

''3. The court instructs the jury that if they believe from the evidence that on or about the 20th day of September, 1907, the plaintiff was traveling northward on Cherry street at the intersection of Nineteenth street in Kansas City, Missouri, and riding in the rear end of a two-horse lumber box farm wagon, and while plaintiff was crossing said Nineteenth street and traveling near the east side of said Cherry street, said defendant, through the negligence and unskilfulness, if any, of its servants and employees in running, conducting and managing a car of the defendant which was being moved by the defendant at a rapid rate of speed along the track of defendant in said Nineteenth street, if you believe from the evidence that it was so moved, while in charge of its said servants and employees, negligently and carelessly ran the said car into, upon and against the wagon in which plaintiff was riding, with great force and violence, and injured the plaintiff, they will find their verdict for the plaintiff.''

I. Appellant contends that the court erred in permitting medical experts, over the objections of defendant, to invade the province of the jury by answering certain improper hypothetical questions. Said questions and answers were as follows:

Hypothetical Questions: Medical Experts.

''Q. Suppose that on or about the 20th of September, 1907, the plaintiff was riding in a wagon crossing the street car track and the car hit the wagon and knocked him out on the pavement and hit the back of his head so as to cause, apparently, at least, a laceration of the scalp, and also a bruise over the left eye, and that he had concussion of the brain; that they took

him to the city hospital right away and the doctors found him suffering with concussion of the brain; and supposing that he was knocked unconscious at the time and was afterwards incoherent in his speech for some days, and he continued in that condition, and was afterwards moved over to Bethany Hospital in Kansas City, Kansas, and continued in that condition for a couple of weeks—this more or less unconscious condition at times—I will ask you whether or not in your opinion these injuries that he sustained in this street car collision, he having received no other injuries in the meantime, might, could or would have resulted in this paralyzed condition you discovered the first time you examined.

"A.  I think it might, could and would have caused this condition that I found existing at the time.

.    .    .    .    .    .    .    .    .    .

"Q.  Now, Doctor, supposing that afterward in April he had a little fight, or a man assaulted him and struck him a blow over the right eye that blacked his eye, but did not knock him down, nor confine him to his bed, but that he stayed at home for a day or two on account of having this black eye, I will ask you whether the subsequent condition in which you found him, and present condition, might, could or would have been the result of that blow, or it might, could or would have been the result of the injuries which I first mentioned in my other question.

"A.  I don't think the latter injury had anything to do with the paralysis because it existed prior to that time, and the extent of the paralysis, so far as the members of the body are concerned, is the same now as it was before.  The paralysis does not seem to have changed in any way."

It is contended by appellant that the question would have been proper if the expert witness was asked whether in his opinion the injury "might or could" have produced paralysis, but that by adding the word

"would" to the question it became improper and invaded the province of the jury. We are unable to agree with this contention. We see no material distinction between the meaning of "would" and "might or could" as used in the question. "Would," in the sense here used, is defined as "expressing what might be expected;" Webster's New International Dictionary, under title "Would." The use of the word "would" did not constitute error. This view is not out of harmony with the holdings of this court in Taylor v. Railroad, 185 Mo. 239; State v. Hyde, 234 Mo. 200; and does not conflict in any manner with the holdings in Glasgow v. Railroad, 191 Mo. 347; Roscoe v. Railroad, 202 Mo. 576, or Smart v. Kansas City, 208 Mo. 162. In the Glasgow case, supra, the doctor testified that the injury *"was* due to the fall." In the Roscoe case, supra, the doctor testified that the injured man's inability to sleep and the pains he suffered in his head and back "was due to the injury" which he received in the collision. In the Smart case, supra, the doctor was permitted to testify that "the injury *precipitated* the amputation." Those answers were the points upon which the respective decisions evidently turned and it is readily seen that the situation in each of the last three mentioned cases is different from that above discussed in the case at bar.

The second question in the case at bar might be subject to criticism if it should be interpreted to be an effort to have the expert say which of two causes did produce the plaintiff's condition. [Smart v. Kansas City, supra.] The way the question is worded it is perhaps an attempt to have the witness say which was the more likely cause, and in that regard approaches somewhat the danger zone. However, taking into consideration the evidence in this case and the answer made to the question, we do not think error was committed. The evidence showed that plaintiff was suf-

256 Mo. 14

fering with paralysis after the collision and long before he received the black eye from the fist blow. It could not be said that the fist blow produced the condition of paralysis which the evidence shows existed prior to receiving the blow. On the other hand, the evidence shows that plaintiff's paralytic condition grew no worse after receiving the black eye. Had the doctor not answered the last question, there is no reason to suspect that the jury would have found the plaintiff's condition was caused by the fist blow. Therefore, even though the question and answer should be conceded, *arguendo,* as improper, we are unable to see, under the circumstances here, wherein defendant was injured thereby. The remarks of LAMM, J., concerning a similar situation, in the case of Bragg v. Met. Street Ry. Co., 192 Mo. 331, l. c. 344, are very applicable here: "Furthermore, in our opinion, if the objection was broad enough to include such contention and was leveled directly thereat, yet the question propounded to Dr. Snell is not obnoxious to such criticism in a case like this, where the whole case proceeded on both sides on the theory that the acident happened and that respondent was injured, and where, as here, the controlling defense is directed to the nonliability of appellant for that accident and that injury."

II. Appellant contends that the court erred in giving plaintiff's instructions numbered one and three; that "No. 1 authorizes recovery under the humanitarian rule; No. 3 on account of excessive speed. Both are argumentative, illegal and inconsistent."

Negligence:
Instructions:
Excessive Speed
of Car: Humanity
Rule.

It will be noticed that these two instructions follow the two theories of liability alleged in the petition. The petition assigns two grounds of negligence. One ground (that embraced in instruction No. 3) is that "defendant through the negligence and unskilfulness

of its officers, agents, servants and employees in running, conducting and managing a car of the defendant which was being moved by the defendant at an unusual and rapid rate of speed along said track while in charge of its said officers, agents, servants and employees, negligently and carelessly ran the said car into, upon and against the wagon in which plaintiff was riding as aforesaid with great force and violence,'' etc. The other ground (that embraced in instruction No. 1) proceeds upon the humanitarian rule. It is contended that these two grounds are inconsistent, that one disproves or destroys the other; that one is based upon ''slow stopping'' and the other on ''fast running.'' The fallacy of this contention is revealed when it is recalled that the humanitarian rule is not based upon ''slow stopping,'' as intimated by appellant but rather upon a *failure* to stop at all or an absence of slackened speed, under certain circumstances. It therefore becomes apparent that a *failure* to stop or slacken speed is not inconsistent with running fast. Both conditions might exist at the same time, and especially so when, as here, the petition or evidence fails to allege or show that the fast running was so excessive as to prevent the stopping of the car within the time and distance prescribed by the humanitarian rule. This proposition has been directly passed upon and a conclusion contrary to appellant's contention announced in the case of White v. Railroad, 202 Mo. 539, 1. c. 558. To the same effect is Farrar v. Railroad, 249 Mo. 210.

We conclude that said instructions properly declared the law applicable to the issues and evidence.

III. It is further contended that the evidence fails to sustain either of plaintiff's theories upon which he seeks a recovery and that therefore the demurrer to the evidence should have been sustained. In support of this contention, it is claimed that: (1) The evidence does not show that after de-

Evidence.

fendant saw or by the exercise of ordinary care could have seen plaintiff's peril the car could have been stopped, consistently with the safety of the passengers, in time to have prevented the collision; (2) The evidence does not show that the car was being negligently operated at a rapid rate of speed.

We are unable to agree with appellant's above contention. As to the first point, we call attention to the fact that one of plaintiff's witnesses testified that the car, if going at a speed of fifteen miles an hour, could be stopped in fifty or sixty feet, taking into consideration the safety of the passengers; defendant's motorman says the car, at the rate it was going, could have been stopped in three car lengths, or ninety-six feet. One of defendant's witnesses testified that the car going at a speed of fifteen miles an hour could have been stopped in one hundred feet with reasonable safety to the passengers, and that if the car was going thirty miles an hour it would take "about two hundred feet" in which to stop the car. Another speed expert testified for the defendant that if the car was going fifteen miles an hour it could be stopped in one hundred feet, and if the car was going twenty-five or thirty miles an hour it could be stopped "pretty nearly as quick as you could at fifteen, because it takes so long to wind up the brake anyway." The evidence on the part of plaintiff tended to show that when the team first went upon the track the car was from one hundred and eighty to two hundred and ten feet away. The crossing was lighted by two gas lights and there was certainly nothing to obstruct the motorman's view or keep him from seeing the horses after they went upon the track, if he had been in the exercise of the degree of care which the law imposes upon him.

As to the second point, it is sufficient to say that there was evidence tending to show that the car was run at an excessive rate of speed, one witness testified it was running twenty-five or thirty miles an hour,

another witness said it was running "awful fast." Several witnesses testified that the car did not slacken its speed before it struck the wagon. There was therefore evidence sufficient to submit to the jury the question as to whether the car was negligently operated at rapid speed.

IV.. A further contention is made that the demurrer to the evidence should have been sustained on the ground that "it appears from plaintiff's own testimony that his own negligence was the proximate cause of the accident."

**Plaintiff's Own Testimony: Humanity Rule: Contributory Negligence.**

Plaintiff testified that when the wagon started north across Nineteenth street he did not know which way the cars ran on that street and first looked toward the east and then turned and looked to the west and saw the car coming sixty or seventy yards distant. At this time the horses' front feet were between the rails and he thought there was plenty of time for the wagon to cross ahead of the car and did not therefore think it necessary for him to jump from the wagon. He is corroborated in this by both the driver of the wagon and also by Jaggard who was near him in the back portion of the wagon. At this time he thought the wagon was traveling about six miles an hour and had about seventeen feet to go in order to clear the track. He thought the car was running at a speed of from twenty-five to thirty miles an hour and that it had one hundred and eighty to two hundred and ten feet to go. He then turned and was engaged in conversation with Jaggard, and a little later, his attention being aroused by what was said by Jaggard directing the driver to "look out," he looked up and saw the car almost upon them, and before he had time to change his position the collision occurred.

In the discussion in the preceding paragraph, it was found that there was evidence tending to show

that the motorman by the exercise of the proper degree of care, under the circumstances, could have seen plaintiff in a position of peril in time to have saved him by the exercise of proper care. Under such conditions, it could not be said that his negligence was the proximate cause of the injury so as to defeat a recovery under the humanity rule. [White v. Railroad, supra, 1. c. 564.] In order to justify the designation of plaintiff's negligence as the proximate cause of the injury and therefore prevent the operation of the humanity rule the situation must be such that plaintiff's negligence caused him to enter the danger zone *too late* for defendant to save him by the exercise of the care required under the situation. The correct rule, applicable here, was announced by LAMM, J., in the case of Ellis v. Metropolitan Street Railway Co., 234 Mo. 657, as follows:

"When a person, out of danger, negligently moves from his place of safety to one of danger from an oncoming street car, so close to it and under such circumstances that his danger could not be reasonably apprehended by those in charge of the car (who see or might see his peril) in time to have saved him by the exercise of ordinary care, then the negligence of the traveler is either the proximate cause of his own injury, or, in case the element of defendant's negligence be also present, then the negligence of the street traveler and the negligence of the carrier are coincident and concurrent—they (excluding the idea of comparative negligence) may be said to balance or offset each other. In either of which hypothesis there is no room at all for the application of the humanity rule. If a given case in that regard is so plain that average fair-minded men cannot reasonably differ about it, a recovery may be denied as a matter of law. That result has been reached in many cases cited. But if there is a ground for fair difference of opinion about

it, then the question is for the jury.  We think that at bottom much of the apparent discord between the cases cited for defendant and those cited for plaintiffs disappears when the facts in each adjudged case are rigidly subjected to the foregoing test.''    [Id., l. c. 672-3.]

Neither should it be said that plaintiff was guilty of contributory negligence which would as a matter of law preclude his right of recovery under the theory submitted in plaintiff's instruction 3.   Plaintiff was not the driver of the team and had no control over the team.   The fact that he misjudged the distance the car was from the wagon when he first looked and thought there was sufficient time for the wagon to cross ahead of the car and therefore remained in the wagon instead of trying to jump out, would not under the circumstances shown by the evidence render him guilty of contributory negligence as a matter of law. [Heintz v. St. Louis Transit Co., 115 Mo. App. 667; Strauss v. Railroad, 166 Mo. App. 153, l. c. 154; Farrar v. Railroad, 249 Mo. 210, l. c. 219.]

In the case of Krehmeyer v. Transit Co., 220 Mo. 639, where the plaintiff was the driver in control of the team and under a state of facts more unfavorable to plaintiff than here, it was held by a majority of the Court in Banc that the question of plaintiff's contributory negligence was for the jury and that his contributory negligence did not preclude a recovery as a matter of law.   [Id., l. c. 651 and 685-6-7.]

V.   Appellant, by a number of instructions, requested the court to submit to the jury the question of plaintiff's contributory negligence.

**Instructions.**   The refusal of the court to give said instructions is assigned as error.

The answer did not contain a plea of contributory negligence.   But it is insisted that even though the general rule is that contributory negligence is an af-

firmative defense which must be pleaded, yet an exception to the general rule allows the defendant to avail itself of the said defense whenever contributory negligence appears from the plaintiff's testimony, and that this exception is sufficient in its scope to entitle defendant to the right of having such question submitted to the jury. It is needless to cite authorities in support of the proposition that where it appears from plaintiff's evidence that he is guilty of contributory negligence, as a matter of law, the court is justified in taking, and should take, the case from the jury, this on the theory that plaintiff's own testimony shows an absence of defendant's liability. But as to the proposition here urged it is sufficient to say that this court in both divisions has by recent rulings announced that in the absence of a plea of contributory negligence, and the absence of such evidence upon the part of plaintiff as would justify the court in finding plaintiff guilty of contributory negligence as a matter of law, the defendant is not entitled to avail itself of such defense and to have submitted to the jury the question of such contributory negligence, even though plaintiff's evidence *does tend* to prove contributory negligence upon his part. [Collett v. Kuhlman, 243 Mo. 585, l. c. 591; White v. Railroad, 250 Mo. 476, l. c. 482.] In the latter case the question is discussed at length and it is therefore unnecessary to pursue the subject further here.

VI. It is further urged that the court erred in not permitting respondent's counsel to argue the question of plaintiff's contributory negligence to the jury. Under the pleadings, issues and instructions the question of plaintiff's negligence was not a question for the jury's deter mination or consideration and the action of the court in that respect was proper.

Argument to Jury.

Complaint is also made of certain statements made by respondent's counsel in arguing the case to the jury. But as to this contention, it is sufficient to say that the appellant's motion for a new trial contains no mention of error arising from statements made by respondent's counsel in the course of his remarks to the jury and it is therefore not a matter for appellate review.

<div style="margin-left:2em;font-style:italic">
Remarks of Counsel: Appeal: Motion for New Trial.
</div>

VII. After judgment was entered in the trial court the plaintiff assigned said judgment to Charles E. Small, one of plaintiff's attorneys, to secure to the law firm of which said Small is a member the payment of their fee for legal services rendered in plaintiff's behalf. The amount of said fee is not shown, but the assignee in his affidavit filed in the Kansas City Court of Appeals says that the fee is much less than the amount of the judgment.

<div style="margin-left:2em;font-style:italic">
Revivor: Assigned Judgment.
</div>

After the assignment of said judgment the plaintiff died. His death was suggested to the Kansas City Court of Appeals, and upon the application of the administratrix of his estate to be substituted as party plaintiff in the stead of said Albert P. Taylor, deceased, the court made an order reviving the cause in the name of the administratrix unless cause to the contrary should be shown by appellant at the next term of said court, and summons was issued, which, together with a copy of the order, was served upon the appellant. In answer to said order to show cause appellant filed in said Court of Appeals its answer and brief and contended that said Small under and by virtue of said assignment became the absolute and legal owner of this action and the real party in interest herein, and asked that the order theretofore made substituting the administratrix as party plaintiff be set aside and an order made substituting as party plaintiff

herein said assignee, Charles E. Small. The Court of Appeals refused appellant's request. It is now urged by appellant that the cause should abate for the reason that the said "administratrix is an improper party to prosecute this cause."

The assignment did not have the effect of assigning the cause of action. But even in a case where the cause of action was assignable and the cause of action had, in fact, been assigned during the pendency of the suit, it was held that under the provisions of section 1924, Revised Statutes 1909, the cause could continue in the name of the original party and that "it is not a matter of which defendant can complain." [Asher v. Railroad, 89 Mo. 116.]

Furthermore, this is not an action upon the judgment but is more in the nature of a continuation of the original suit. [Macklin v. Allenberg, 100 Mo. 337.] If the judgment should be reversed and the cause remanded, the case, if it proceeded further, would have to proceed in the name of the administratrix or her successor, party plaintiff, as the real party in interest. If the case is affirmed the assignee would proceed to collect the judgment not by proceeding upon the original cause of action but by execution or other proceeding upon the judgment or rights incident thereto.

It therefore follows that the cause was properly revived in the name of the administratrix. [R. S. 1909, secs. 2077 and 5438.]

The judgment is affirmed. *Roy, C.,* concurs.

PER CURIAM.—The foregoing opinion of WILLIAMS, C., is adopted as the opinion of the court. *Walker, P. J.,* and *Brown* and *Faris, JJ.,* concur.