J. B. NEEVEL, R. B. NEEVEL AND H. L. NEEVEL, APPELLANTS, v. FRANK R. MCDERMAND, MYRTLE A. MCDERMAND AND O. H. GENTRY, RESPONDENTS.

Kansas City Court of Appeals.    January 11, 1926.

1.—Judgment—Judgment Will Not be Set Aside on Ground of Fraud Merely Because of Perjured Testimony in the Trial. Judgment will not be set aside on ground of fraud merely on account of perjured testimony in the trial.

2.—Same—Fraud in Procurement of Judgment Held Not Established. In equitable proceeding to set aside judgments for fraud in procurement thereof, fraud held not established.

3.—Same—To Warrant Setting Aside Judgment for Fraud, Evidence Must be Strong, Cogent and Leave no Room for Reasonable Doubt. To warrant setting aside judgment for fraud, evidence must be strong, cogent and leave no room for reasonable doubt.

4.—Assignments—Abatement and Revival—In Suit Upon Mechanic's Lien Defendants Had a Right to Purchase Plaintiffs' Cause of Action and Carry Them on Against Co-defendants in Name of Plaintiffs. Under section 1354, Revised Statutes 1919, persons who had contracted for construction of building as parties defendant with construction contractors in subsequent mechanic lien suits had a right to purchase plaintiffs' cause of action and carry them on against their co-defendants in the name of plaintiffs.

5.—Appeal and Error—Claim That Executions Were Void Cannot be First Raised on Appeal. In proceeding to set aside judgments and restrain sale of real estate of plaintiffs under executions issued thereon claim that executions are void, first raised on appeal, cannot be considered.

6.—Courts—Improper Assignment of Case From One Division of Circuit Court to Another Held Not Shown. Claim that court was without jurisdiction because of improper return of case from division of circuit court to which it had been assigned to assignment division, and reassignment to another division, held not shown.

7.—Appeal and Error—Death of Party Appellant Not Ground for Holding Case, as Same May Proceed in Name of Surviving Appellant. Death of party plaintiff, pending appeal, is not ground for holding case, but under section 1506, Revised Statutes 1919, case proceeds under name of surviving appellant.

*Corpus Juris-Cyc. References: Abatement and Revival, 1CJ, p. 150, n. 2; p. 151, n. 3. Appeal and Error, 3CJ, p. 716, n. 22; p. 718, n. 49, 50; p. 720, n. 51; p. 1024, n. 58. Courts, 15CJ, p. 869, n. 48; p. 870, n. 57. Judgments, 34CJ, p. 453, n. 27; p. 475, n. 6; p. 496, n. 14, 15.

Appeal from the Circuit Court of Jackson County.—Hon. Thad B. Landon, Judge.

AFFIRMED.

*Charles H. Winston* for respondents.

*Charles C. Crow* for appellants.

BLAND, J.—These are suits in equity seeking to set aside on the ground of fraud two judgments entered in the circuit court of Jackson county, Missouri, on November 5, 1919, one in the case of W. F. Coen, et al. v. Frank R. McDermand, et al., and the other in the case of Stewart-Peck Sand Co. v. Frank R. McDermand, et al., and to restrain the sale of real estate of plaintiffs by the sheriff, O. H. Gentry, under executions issued upon said judgments. The judgments were in the sum of $998.14 and $667.37, respectively. The chancellor rendered decrees in favor of defendants and plaintiffs have appealed. The cases were tried as one case in the circuit court and while there are two appeals they have been consolidated and submitted as one case in this court.

The facts show that on February 20, 1913, two petitions were filed in the circuit court of Jackson county, Missouri, each seeking to enforce a mechanic's lien against certain property of the defendants herein, Frank R. McDermand and wife, Myrtle, and to obtain a personal judgment against the J. B. Neevel & Sons Construction Company, a corporation, and plaintiffs herein, J. B. Neevel, R. B. Neevel and H. L. Neevel, who were alleged to be co-partners doing business under the name of the J. B. Neevel & Sons Construction Company. There is some question as to whether the Neevels, individually, were described as partners in one of the suits but that is immaterial here. It was alleged in these petitions that on or about the 21st day of October, 1911, a contract was entered into between J. B. Neevel & Sons Construction Company and J. B. Neevel, R. B. Neevel and H. L. Neevel and Frank R. McDermand and wife, whereby the construction company and the Neevels agreed to construct a business

building in Kansas City for the McDermands, and that the construction company and said Neevels purchased certain materials from plaintiffs, which were used and went into the construction of the building; that a large amount due for such materials had not been paid. Plaintiffs sought to and did obtain said judgments.

Answers were filed to these petitions by the Neevels, personally, which consisted of general denials and denials under oath that they were partners. They also denied that they made the contract for the construction of the building. On October 15, 1919, a notice was published, under the rules of the circuit court of Jackson county, that certain cases would be peremptorily called for disposition, these cases being among the number to be called on October 29th. On the latter day negotiations were begun between the attorney for the McDermands and the attorney representing plaintiffs in both cases, looking toward the purchase by Frank R. McDermand of the accounts sued upon in the two cases. These negotiations finally culminated on November 3, 1919, in the purchase by McDermand of these claims and plaintiffs' causes of action against the corporation and the Neevels for ninety-five cents on the dollar. Formal assignments were drawn and executed, and acknowledged before a notary public. When the cases were called for trial the defendants, other than the McDermands, did not appear. The cases were submitted to the court. It was stated to the court that the claims had been assigned to McDermand and that the cases would be prosecuted in the name of the plaintiffs by Mc-Dermand, the plaintiffs having no further connection with the cases. The cases were tried separately, resulting in judgments against the defendants (except, of course, the two McDermands who were dismissed) and thereafter the assignments were respectively attached to the judgments.

It was pleaded, and claimed by plaintiff herein in the trial of the present cause, that there was an agreement between the Coens and the Neevels that the Coens would notify the Neevels when the Coen case would be called for trial, and that there was an agreement between the attorneys for the respective parties that the attorney for the Coens and the Stewart-Peck Sand Company would watch the cases in the circuit court and notify the attorney for the Neevels of the time they were to be called for trial; that there was a failure of compliance with this agreement and therefore the Neevels and their attorney did not appear. It is also claimed that the judgments in those cases were obtained by perjured testimony in that the witnesses testified that the materials were furnished to the Neevels personally as partners instead of to the corporation.

As to the alleged agreement between the parties the testimony was as follows: Mr. John A. Newman, who was the attorney for the Neevels, testified that shortly after the cases were filed, the attorney for

the plaintiffs in both suits, Mr. B. V. Davis, came to him and told him that the attorney for the McDermands had filed motions in the cases seeking to have the petitions made more definite and certain, claiming that the signature to the contract for the construction of the building was not the signature of the corporation but was that of the partnership composed of the three Neevels. Davis desired to know the facts. Newman stated that the contract was made with the corporation alone. Davis wanted testimony to show that the material went into the building and on the question as to whether the contract was made by the corporation or the alleged partnership. Newman told him that if he would watch the cases and let him know when they were to be set for trial, he would furnish the desired testimony.

Davis's version of his conversation with Newman was that he told Newman that he desired the latter to furnish at the trials the original contract for the erection of the building and that he agreed to see that the cases did not go to trial while Newman was in military service; he denied having agreed to notify Newman as to when the cases would be set for trial. He further testified that at no time did he relate to the attorney for the McDermands (Mr. Winston) the agreement that he had with Newman. Winston testified that he had no notice or knowledge of any agreement between Davis and Newman concerning the trial of the cases. The cases were not tried until after Newman returned from the army.

J. B. Neevel testified that about ten days before the day the judgments were entered, Mr. W. F. Coen called him by telephone at his home and stated that "the case would soon be coming up and wanted to know where I would be so he could call me up by phone . . . and let me know." Mr. Neevel replied that he would be at home. He further testified that he did not know Coen's object in calling him; that "I supposed he would call again and it was time to notify my attorney if he didn't know it;" that this was the only conversation he had with Coen. He thought that it was W. F. Coen who called him. It was his voice and the speaker said that it was W. F. Coen who was calling. Neevel did not notify his attorney.

Mr. Raymond B. Neevel testified that a short time before the judgments were rendered Mr. W. F. Coen called him by phone and stated "that his case was about to come up, that he wanted me to come down here and wanted to know if I would be at my office so he could call me and get me to come down. I said 'yes' and he said that he would call me and I agreed to stay there by the phone so he could ring me." He further testified that Coen never called him although he was about his place of business and could have been reached; that Coen did not state anything about Neevel bringing anything with him "papers or anything of that kind."

Mr. W. F. Coen, testifying for the defendants, stated that he did not have any conversation with either J. B. Neevel or Raymond B. Neevel in reference to the cases; that he did not agree at any time to notify them of the time the cases were coming up for trial. He stated, however, that his brother, Archie S. Coen, who was in California at the time of the trial of this case, attended to the litigation and that he may have called up the Neevels. Mr. Davis testified that he had talked with the Neevels concerning the procuring of the information that he sought from Newman but could not get any satisfaction and that he told "my client to get hold of the Neevels personally and try to arrange to get their testimony." So the telephone conversations were likely carried on by Archie Coen.. At the trial of the two cases, which was conducted by Mr. Winston (attorney for the Mc-Dermands) in the name of plaintiffs, Archie S. Coen, in the trial of the case of Coen v. McDermand, testified that the Coens had been in business about sixteen or seventeen years and during that time they had carried on business with J. B. Neevel & Son and J. B. Neevel & Sons Construction Company; that his accounts were O. K'd by R. B. Neevel, "whose name is signed there to it" (the account sued upon); that in doing business with the Neevels, plaintiffs always carried their account with them as J. B. Neevel & Sons; that the materials that went into the building, which were being sued for, were sold to J. B. Neevel & Sons. Certain evidence in another lawsuit was introduced tending to show that the business was carried on in the name of J B. Neevel & Son. The testimony in the Stewart-Peck Sand Company case was similar to that in the other case.

The building contract recites that it was between "J. B. Neevel & Sons Construction Company" and Frank R. McDermand. It is signed by "J. B. Neevel & Sons, Contractor, J. B. Neevel, President." "J. B. Neevel & Sons Construction Company" was not described as a corporation anywhere in the contract. A bond in the sum of $10,000 was given for the faithful performance of the contract, which was signed by the "J. B. Neevel & Sons Const. Co., Contractor, J. B. Neevel, President, J. B. Neevel, R. B. Neevel, Securities." On the third day of May, 1911, Articles of Incorporation were granted by the Secretary of State to the J. B. Neevel & Sons Construction Co. The stock in the corporation was owned by the three Neevels. For several years prior to that time plaintiffs herein were engaged in the construction business as partners under the name of "J. B. Neevel and Sons, Contractors and Builders." After the formation of the corporation, the business seems to have been carried on almost entirely in the same way that it had been before. The accounts in the bank were kept in the same name, that is, "J. B. Neevel & Sons" and materials were purchased in that name. Neither the Coens nor the Stewart-Peck Sand Company knew that there was

any corporation involved. The purchases from them were made for "J. B. Neevel & Sons." Raymond B. Neevel stated that they had stamps made prior to the incorporation and that they continued to use them, that "they were given to different men on the jobs that received material;" that "when we incorporated the business we just went ahead and let these men use the stamps." He admitted that the bank account was never changed.

Under these circumstances whether the witnesses in the two mechanic's lien cases were justified in testifying that the materials were sold to the Neevels as partners we need not say for the reason that it is well settled that a judgment will not be set aside on the ground of fraud merely on account of perjured testimony in the trial. [Lieber v. Lieber, 239 Mo. 1.]

The chancellor in deciding the cases announced his reason therefor; he stated to the effect that he found for defendants because he thought that the issue was as to which version should be taken as to the conversation between Newman and Davis; that he believed both of them to be reputable attorneys at the bar but that they had not reduced whatever their agreement was to writing, and in view of the decisions that judgments should not be set aside unless the evidence was "clear, convincing and conclusive," he was constrained to decide the case against the plaintiffs. Plaintiffs are not only not satisfied with the conclusion of the chancellor drawn from the facts stated by him, but point out that the chancellor did not take into consideration the alleged agreements between the Neevels and Coen. As far as these agreements are concerned (and we think no doubt that there was some kind of a conversation between Archie Coen and the Neevels), if the J. B. Neevel's version of the conversation is to be taken as true, this agreement of itself would not be sufficient ground to authorize the court to set aside the judgment. The testimony of J. B. Neevel shows that no explanation was given as to why Coen was calling him up. Therefore, he could not have thought otherwise than that it was a mere act of courtesy on the part of Coen. The testimony of R. B. Neevel tends to show that Coen merely wanted Neevel as a witness in the case. Their attorney was looking after the cases; there was no testimony or claim that the Neevels were looking after the matter of the setting of the cases for trial and it was to their attorney that they were naturally looking for reliable information upon the subject. Defendants contend that under the circumstances, after the conversations with Coen, the Neevels should have communicated with their attorney but, not passing upon this subject, we think that it clearly would have been negligence for them to have solely relied upon the conversation with Coen (Smith v. Krene, 231 Mo. 215, 233) when they had employed an attorney to look after the case for them, and who was (at least as far as any knowledge they

220 Mo. App.—52.

had) discharging his duty in this respect. No agreement of clients is shown in the Stewart-Peck Sand Company case.

Of course, the fact, if it be a fact, that Coen made the alleged promise to the Neevels would throw some light upon what was the agreement between Davis and Newman and would tend to corroborate Newman's testimony. Davis told his client to obtain the information that he desired from the Neevels if possible, and for this reason, as we have already stated, we feel that there is little doubt but that Archie Coen had some kind of a conversation with the Neevels. We think, however, it is just as reasonable to say that this conversation was merely for the purpose of getting a promise out of the Neevels to have some one at the trial to testify in regard to the matter about which information was sought by Davis, as is contended by Davis in reference to his conversation with Newman, as otherwise. We are not entirely satisfied with the testimony of J. B. Neevel, who was the father of the other Neevels. This witness stated that he had not been actively connected with the business since the incorporation, but he seemed to readily remember the alleged things that occurred that were for his benefit but had no recollection of the others. He seemed to be positive that it was the corporation and no other which signed the building contract. The alleged agreement was not reduced to writing and memory is often very frail at best and Neevel was an interested witness. In order to hold that the agreement was as plaintiffs contend, we would have to say that Davis fraudulently violated his agreement. There was no evidence seeking to impeach him and there is no suggestion in the testimony that he is unworthy of belief. In fact, counsel for plaintiffs interrupted the court when the latter was deciding the case, and stated, "I think both (Newman and Davis) intended to tell the truth."

Under the circumstances we would rather say, and think we should say, that there was a misunderstanding on the part of Newman as to the agreement. We need not say what our conclusion would be if there was a question of the mere weight of the testimony, for that is not the matter involved here. The law is that to warrant the setting aside of a judgment for fraud, the evidence must be strong, cogent and leaving no room for reasonable doubt. [Cackley v. Myers, 199 S. W. 719; Lieber v. Lieber, supra.] In view of this rule we must decide the matter against plaintiffs' contention.

However, even though it be conceded that Davis violated the agreement testified to by Newman, defendant has not pointed out in what manner the agreement was binding upon the McDermands, or their attorney, at least in the absence of any knowledge of it on their part. The evidence is undisputed that they had no such knowledge. There is no merit in the contention that Davis and Winston conspired to violate Davis's alleged agreement with Newman to notify Newman of

the setting of the cases in order to get judgment against the Neevels, who it is claimed were not liable, realizing the corporation was insolvent.

There is no question but that the McDermands had a right to purchase the causes of action against the defendants and carry them on in the name of the plaintiffs. This right is given them by statute. [Section 1354, R. S. 1919; State ex rel. Bayha v. Philips, 97 Mo. 331; Asher v. Ry. Co., 89 Mo. 116; Taylor v. Street Ry. Co., 256 Mo. 191, 218.] But plaintiffs say that at the time the judgments were taken, the issues and status of the parties were entirely changed without notice to the Neevels or their attorney. It is true that the parties in effect were changed. McDermand, who theretofore had been a party defendant, became the real plaintiff in interest but under the provision of section 1354 he had a right to proceed with the cause in the name of plaintiffs. Nothing is said in the statute about the purchaser of the causes of action being required to give notice to the defendant. The matter of the assignment of the account was not a matter with which the defendants, Neevels, were concerned. [Taylor v. St. Ry. Co., supra, 218.] So far as they were concerned, the issues were not changed. There was no relation of confidence or the like between the Neevels and McDermand which would require him to notify them of the fact that he was no longer a party defendant but was prosecuting the case as the real party in interest. There is no point made that the "purchase" of the cause of action was in law a payment and discharge of the debt and not, in fact, a purchase, so we need not pass upon that. It would, perhaps, be immaterial in this proceeding in any event.

Under the statutes, sections 7229 and 7230, Revised Statutes 1919, either the Neevels or the Neevel corporation was primarily liable for the payment of the debts. The McDermands were not personally liable at all and only a judgment *in rem* was sought against them. The contract price of the building was $27,251. There was testimony offered by defendants in the trial of the present case, which, on the objection of plaintiffs, was excluded by the court, to the effect that the Neevels had been paid $19,235 on the building and had failed to pay more than $10,000.00 owing for materials furnished for the building, which the McDermands had been compelled to pay. If this evidence is material to the issues, we must consider it. There was evidence that the corporation was bankrupt and out of business. This was the situation when the two mechanic's lien cases were tried. It was admitted in the case at bar that the corporation, at least, was liable for the accounts sued on in the two cases, brought by the Coens and the Stewart-Peck Sand Company. It seems apparent, then, that as between the McDermands and the Neevels (even if the latter were personally liable) there was nothing in the relationship that required

McDermand to notify the Neevels of the situation at the time of the trial of those cases. If the Neevels were strangers to the contract as they now claim, of course, it can hardly be contended that there was an obligation on the part of the McDermands to consider the former's interest as there was no relationship whatever as between them except that they were merely sued by the plaintiffs therein as joint parties defendant. The McDermands did not mislead the Neevels in any respect. Their answer in the two cases discloses that they were claiming in no uncertain terms that the contract was with the Neevels as partners and that the materials that went into the building were purchased by them in such capacity.

The executions read "Wilbur F. Coen and Archie S. Coen" in one case and "Stewart-Peck Sand Co." in the other, "to the use of Frank R. McDermand, assignee against J. B. Neevel Construction Co., et al." It is claimed that under the rule in the case of Bank v. Bulkley, 68 Mo. App. 327, 334, these executions are void. However, plaintiffs' petitions are not founded upon any such theory. The petitions do not raise any point in reference to this matter nor was it mentioned at the trial. We think it quite apparent that it cannot be now raised.

The two cases resulting in the judgment attacked, were tried in division #6 of the circuit court. It is claimed that one of these cases was originally assigned to #6 and the other to another division and that McDermand's attorney induced the judge of the latter division to send the case back to the assignment division and have it reassigned to division #6; that this was in violation of the rules of the court and that, therefore, division #6 had no jurisdiction to render the judgment in that particular case. The same situation is present in reference to this point as exists in relation to the point that the executions are void. However, the record shows that it was stipulated between the parties in writing to the effect that "these cases were duly assigned in regular order to division #6 and was in #6 for trial at the time the judgments were entered." Anyhow, the claim is founded upon the testimony of Davis that the cases went to a division other than division #6 by a mistake of the clerk. Davis testified positively that the case had been properly assigned to division #6 but went to another division and McDermand's attorney got the matter straightened out by sending the case back to the assignment division and having it reassigned to division #6, so it would appear that the case never was properly assigned to the other division.

Since the case was argued and submitted, plaintiffs have filed suggestions of the death of Raymond R. Neevel and ask that the case be held until an administrator is appointed for the deceased, whereupon he will be substituted for the deceased as party plaintiff. Respondents object to holding the case and we think properly so. Under the

statutes and decisions the case proceeds under the name of the surviving appellants. [Sec. 1506, R. S. 1919; Prior v. Kiso, 96 Mo. 303; Hunleth v. Leahy, 146 Mo. 408, 415; Essey v. Bushhaka, 304 Mo. 231, 237.]

The judgment is affirmed. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.