JESSIE P. FARRAR v. METROPOLITAN STREET RAILWAY, Appellant.

Division One, March 28, 1913.

1. NEGLIGENCE: Pleading: Repugnancy. Allegations in a petition for damages for personal injuries, to-wit, that the street car which injured plaintiff was exceeding the speed limit set by ordinance, and that the motorman discovered or ought to have discovered the plaintiff's peril in time to avoid injuring her, are not repugnant.

2. ———: Evidence: Speed of Car. Evidence *held* sufficient to support a finding that the speed of the car which injured the plaintiff exceeded twenty miles an hour.

3. ———: ———: ———: Excessive. Where there was evidence that the wagon which bore the plaintiff when she was injured by a collision with a street car was leaving the car track, the team moving in a trot, thus making it clear that the corner of the wagon which was struck would in another moment have moved out of the danger zone, there is ample evidence to support a finding that the speed of the car was the proximate cause of the injury if the jury found the speed excessive.

4. ———: ———: ———: Contributory Negligence: Presumptions of Law. In this suit for damages for personal injuries received in a collision between defendant's street car and a hay wagon on which plaintiff was riding there was testimony tending to show that the driver turned his horses sharply as the car was passing and thereby threw the rear of the wagon against the car, but, even if the driver's negligence could be imputed to the plaintiff, which cannot be done under the facts of this case, where there is, as well, ample evidence tending to

Farrar v. Railroad.

show that the driver's act had nothing to do with the injury, it cannot be assumed as a matter of law that plaintiff is barred by contributory negligence.

5. ————: ————: ————: ————: ————: **Other Facts.** Where plaintiff was injured while sitting with her feet hanging over the side of a hay wagon as it was driven along near a car track, and it appears from the evidence that she was not in control of the wagon, that the street lights were burning so that the wagon could be seen 300 feet away by the motorman of the car which struck it, and the gong on the street car was not rung, it cannot be said as a matter of law that there was such contributory negligence in this respect on plaintiff's part as to bar recovery.

6. ————: ————: **Stopping Street Car: Humanitarian Doctrine.** If there is evidence of any kind sufficient to support a finding that a car could have been stopped in time to avert injury after the danger was or ought to have been discovered, it will warrant the submission of the case to the jury on the humanitarian or last clear chance theory.

7. ————: ————: ————: ————: **Physical Facts.** *Held,* that the physical facts do not preclude the application of the humanitarian doctrine in this personal injury suit.

8. ————: **Instructions: Excessive Speed of Street Car: Moving Into Danger Zone.** Where plaintiff was injured by a collision between a hay wagon, on which she was riding, and a street car, there being evidence that the car was exceeding the speed limit set by ordinance at twenty miles an hour, it was proper for the court to amend defendant's instruction, asked upon the theory that when the motorman saw the wagon it was in the clear, by inserting words as follows: "If the motorman *was running the car not over twenty miles per hour and* saw the wagon . . . out of range," etc.

9. **EVIDENCE: Impeachment: Previous Testimony of Witness.** A transcript of a previous examination, not signed by the witness and therefore not a deposition, may, when it relates to a material matter, be admitted for impeachment after a proper foundation is laid.

10. **REMARKS OF TRIAL JUDGE: Opinion Evidence.** When a wagon driver was testifying as to the effect upon the rear of his wagon of a sharp turn of the front end, a circumstance he did not observe when the collision occurred which injured plaintiff, the judge remarked that the witness must not testify "by conjecture or conclusion," and then said, "the witness says he knows but the court rules he does not know." Defendant's attorney excepted, whereupon the judge took the witness and showed that he did not know as a fact, and then remarked:

"Now, the ruling of the court was correct and counsel is rebuked for making a prejudicial objection in front of the jury." Counsel excepted and the court said, "He shows by his testimony he doesn't know." To this counsel twice excepted. The court then said: "I won't have any defiance of the rulings of the court. Go ahead." *Held*, not reversible error.

11. **NEGLIGENCE: Verdict: Excessive.** Where plaintiff, a young unmarried woman, was so injured by the negligence of defendant's servants that her left leg had to be amputated seven and one-half inches below the knee, a verdict for her for $15,000 is affirmed by the Supreme Court provided she remit $5000.

Appeal from Jackson Circuit Court.—*Hon. John G. Park*, Judge.

*Affirmed (conditionally).*

*John H. Lucas* for appellant.

(1) There is no evidence sufficient to sustain either specification of negligence. (a) Excessive speed, no credible evidence, contrary to physical facts, not proximate cause, contributory negligence. 3 Chamberlayne, Evidence, sec. 2086; Muth v. Railroad, 87 Mo. App. 434; Burge v. Railroad, 148 S. W. 932; McCreery v. Railroad, 221 Mo. 18; Morkawitz v. Railroad, 186 Mo. 350; Moon v. Railroad, 141 S. W. 870; Marsh v. Railroad, 104 Mo. App. 577; Burleigh v. Railroad, 124 Mo. App. 724; Schmidt v. Transit Co., 140 Mo. App. 187. (b) Humanitarian rule, no credible evidence conjectural, against physical facts, not proximate cause. Roenfeld v. Railroad, 180 Mo. 565; Boring v. Railroad, 195 Mo. 552; Gourley v. Railroad, 35 Mo. App. 92; Heinzle v. Railroad, 182 Mo. 554; Senn v. Railroad, 108 Mo. 151; Burge v. Railroad, 148 S. W. 931; Wasmer v. Railroad, 148 S. W. 155; Matz v. Railroad, 217 Mo. 275; Schmidt v. Transit Co., 140 Mo. App. 187. (2) Admission and exclusion of evidence. Paper claimed to be deposition of I. N. Hargis. Glasgow v. Railway, 191 Mo. 368; Chalmers v. Railroad, 153 Mo. App. 61. (3) Excessive verdict. Rich-

ardson v. Railroad, 233 Mo. 346; Chitty v. Railroad, 166 Mo. 443. (4) Misconduct of court. State v. Reed, 58 Mo. 507; Landers v. Railroad, 134 Mo. App. 88; Rose v. Kansas City, 125 Mo. App. 236.

*J. Walter Farrar* and *White & Lyons* for respondent.

(1) There was evidence sufficient to sustain both allegations of negligence, *i. e.*, that the car was being operated in excess of the ordinance speed limit of twenty miles per hour, and there was sufficient evidence to submit the case to the jury on the humanitarian doctrine. (2) The allegations of negligence in the petition were not inconsistent, as the excessive rate of speed, in violation of the ordinance, and the failure to attempt to stop the car until it struck the wagon, when it could have been stopped within twenty feet, if it had been going in accordance with the ordinance speed limit, according to the admissions of the motorman, were thoroughly consistent allegations of negligence. White v. Railroad, 202 Mo. 539; Alten v. Railroad, 133 Mo. App. 425; Thompson v. Livery Co., 214 Mo. 487; Strauchon v. Railroad, 232 Mo. 587. (3) There was not a particle of evidence in the record showing contributory negligence on the part of the plaintiff, and the negligence of the driver of the wagon could not be imputed to the plaintiff. Sluder v. Transit Co., 189 Mo. 143; Little v. Hacket, 116 U. S. 366; Lewis v. Railroad, 162 N. Y. 52; Cotten v. Railroad, 109 N. W. 835; Transit Co. v. Norton, 141 Fed. 599; Becke v. Railroad, 102 Mo. 544; Dixon v. Railroad, 104 Mo. 491. (4) Instruction 7-D was properly modified by the court before it was given, because in the manner in which it was asked originally it left wholly to the judgment of the motorman the issue of the negligence of the defendant, predicated upon the hypothesis that he had the right to assume that the wagon was out of danger,

and that he was not required to slacken the speed of the car if he thought he could clear the wagon until after he discovered he could not clear it. The motorman had no right to act upon any such rule, because where precious lives or limbs of citizens are at stake, if established, such a rule would mean to let the motorman himself determine the case of the plaintiff by testifying as he did in this case, that he thought he could clear the vehicle, and hence did not slacken his speed. If this instruction were to become a rule of law, then the maimed and crippled citizens upon the public thoroughfares of crowded cities would be remediless in courts of justice. (5) For purposes of impeachment, when the motorman was brought upon the stand by the defendant, and testified to a diametrically opposite state of facts, the court permitted the plaintiff to ask this employee of the defendant the questions contained in his deposition for the purpose of showing self-contradiction contained in this formerly sworn testimony, and that this was competent for purpose of cross-examination and impeachment is held by all the authorities in courts where correct judicial standards obtain, for the purpose of arriving at the truth of any transaction. 2 Wigmore on Evidence, pp. 1035, 1037, 1038, 1206; Railroad v. Artery, 137 U. S. 519. (6) The verdict is not excessive. Jewell v. Bolt and Nut Co., 245 Mo. 720; Yost v. Railroad, 245 Mo. 219; Stotler v. Railroad, 200 Mo. 107; Partello v. Railroad, 240 Mo. 122. (7) There was no misconduct on the part of the court. State v. Teeter, 239 Mo. 483; State v. Duestrow, 137 Mo. 44; State v. Pratt, 121 Mo. 566; State v. Etterige, 188 Mo. 352.

BLAIR, C.—This is an appeal from a judgment for $15,000 recovered by plaintiff in the circuit court of Jackson county, in an action for damages for injuries sustained on the evening of August 18, 1908, when one

of defendant's cars collided with a wagon upon which plaintiff and twenty-six other young ladies were riding. The wagon was obtained from The Kansas City Carriage and Buggy Company and was being driven by an employee of that company to whom the only direction given was that he should drive to Swope Park. The wagon was proceeding southward along Troost avenue and was approaching Forty-sixth street when it was struck by the car. The negligence alleged is the violation of a speed ordinance, failure to sound warning and want of ordinary care after defendant discovered plaintiff's peril.

Some six or eight blocks north of Forty-sixth street the car and trailer involved in the collision stopped that the crew might replace a fuse which had "blown out," and there the wagon upon which the plaintiff and her companions were riding passed them. Thence the wagon proceeded southward along the car line on Troost avenue, the wheels astride the west rail of the south bound track. The evidence tends to show this use of the track was necessitated by the presence in the avenue of debris due to street improvements then being made. The hour was about 9 p. m., the night was not more than usually dark for the hour and season, the car was equipped with a headlight and the street lights were burning at Forty-fifth and Forty-sixth and other cross streets. From the point where the car stopped, as stated, to the point of collision the track is straight and there is no physical obstruction of the view.

There is sharp conflict in the evidence as to the speed of the car. The ordinance fixed a limit of twenty miles per hour. There is evidence the car was running twenty-five or thirty miles an hour for several blocks before it struck the wagon and that its speed was unchecked until the collision occurred. There is also evidence, offered by defendant, that the car stopped at Forty-fifth street and after starting again attained

a speed not exceeding fifteen miles per hour which before the collision had been reduced to a rate variously estimated from four to seven miles per hour. There is also conflict in the evidence as to the distance the car ran after striking the wagon. Some of the evidence tends to show the stop was made in a distance of seven to ten feet; one witness testified the stop was made almost instantaneously and other testimony is that the car ran fifty feet or more. Defendant's motorman testified that after leaving Forty-fifth street he saw the wagon three hundred feet away near Forty-sixth street. There was evidence the driver of the wagon looked back and saw the approaching car one hundred and fifty or two hundred feet away, drove off the track and then continued driving southwardly, gradually moving away from the west rail. The evidence conflicts on the question whether the wagon was "in the clear" as the car neared it. Plaintiff and her companions, constituting a church society, were indulging in what is called a hay ride and plaintiff was sitting near the center of the left hand or east side of the wagon, her feet hanging over the side. She says when she first observed the car's approach the wagon platform, which protruded somewhat, was over the west rail, though the wheels were west of that rail; that the car was but a short distance away and coming so rapidly that she had no time to do more than to attempt to raise her feet when the car struck the wagon and her foot was practically crushed off above the ankle.

The vestibule was several inches narrower than the body of the car and the evidence shows the former passed the corner of the wagon without striking it. There is substantial evidence that it was the protruding rounded shoulder of the body of the car which struck the corner of the wagon platform. This platform was eighteen feet long, eight feet wide and three feet nine inches high. . It was between the edge of the

side of this platform and the corner or side of the car plaintiff's leg and foot were caught and crushed.

I. It is contended that the petition seeks recovery upon allegations of negligence so inconsistent as to destroy each other and the pleading containing them. No such question was raised in the trial court nor does counsel in this court advance any argument or cite any decision supporting this assignment. There is no necessary repugnancy between the allegations mentioned even if repugnancy could now have the effect claimed. Though the speed of the car exceeded the ordinance limit yet it might well be true the motorman discovered or ought to have discovered plaintiff's peril in time to have avoided injuring her, in which even it would be the province of the jury to determine which act of negligence was the proximate cause of injury. Further, in principle the point has heretofore been adjudged adversely to defendant's contention. [Sluder v. Transit Co., 189 Mo. l. c. 123, 136; Rapp v. Transit Co., 190 Mo. 150, 153.]

*Negligence: Allegations Not Repugnant.*

II. The sufficiency of the evidence is questioned. In this connection it is insisted (1) there is no evidence the car was running more than twenty miles an hour, (2) the excessive speed was not the proximate cause of injury, (3) plaintiff was guilty of contributory negligence, (4) there is no evidence as to the time in which the car could have been stopped, and (5) the physical facts demonstrate the inapplicability of the humanitarian or last chance doctrine.

*Sufficiency of Evidence.*

1. Several witnesses testified the car was running twenty-five to thirty-five miles per hour. Some of these were shown to be experienced in timing moving rains, automobiles, boats and other moving vehicles and objects and the testimony of others was admitted without

*Proving Speed of Street Car.*

objection.   One of these witnesses was upon the side-walk between Forty-fifth and Forty-sixth streets; an-- other was driving along Troost avenue in a buggy a block and a half north of the place of injury; another was a passenger on the trailer drawn by the car which struck the wagon.  The testimony is entirely sufficient to support a finding that the speed of the car exceeded twenty miles an hour.   In this respect this case is wholly unlike McCreery v. United Railways Co., 221 Mo. l. c. 26, et seq., upon which counsel seems chiefly to rely.   In that case one witness, after saying he did not notice the speed of the car, was directed to *guess;* another after *guessing* declared he didn't notice the speed and the opinion of the third was a conclu- sion he drew from his own movements during the time the car moved a stated distance—a conclusion it would be for the jury to draw rather than the witness, but which the testimony of the witness did not warrant either witness or jury in drawing.   The testimony in this case is markedly different.   As said in the case cited (l. c. 28), "courts have never required a very high degree of experience to enable a witness to give his opinion upon the matter of the speed of a street car" and, measured by the usual standard (Muth v. Railroad, 87 Mo. App. l. c. 434) the testimony of the witnesses in this case possessed sufficient probative force to warrant a finding of excessive speed.   The conflict of evidence was for the jury to solve.

2.   There was evidence the wagon was leaving the track, the team moving in a jog trot, and if so, it is clear the corner which was struck would in another moment have moved the three or four inches necessary to place it out of the zone of danger.  In the circumstances if the jury found the speed excessive there is ample evidence to support a finding it was the proximate cause of the injury.

Proximate Cause.

3.   It is insisted contributory negligence bars re- covery.  This contention is grounded upon the assump-

Farrar v. Railroad.

Negligence.
Contributory

tion of the truth of the testimony tending to show the driver turned his horses sharply to the right as the car was passing and thereby threw the rear of the wagon to the left and against the car and the further assumption that the negligence of the driver is imputable to plaintiff. There is ample evidence tending to show the driver's act in turning his horses had nothing to do with causing the injury and the fact the wagon undoubtedly struck at or near the front of the body of the car and the testimony that the driver did not turn his horses until the vestibule of the car was opposite the horses' heads would seem to refute the contention that the rear corner of a wagon eighteen feet long could have come in contact with the car at any place there is evidence tending to show the car was struck.

There was other evidence that the collision did not result from the driver's turning his horses and also expert testimony tending to show it could not have done so. In these circumstances it would have been error for the trial court to assume the driver's act caused the collision. Nor is the assumption that the driver's negligence, if any, is imputable to plaintiff permissible in view of the facts disclosed by this record. The instruction given on this branch of the case is a rescript of one approved by this court in Sluder v. Transit Co., 189 Mo. l. c. 138, et seq., and the court's action in giving it in this case was fully justified by the evidence.

It was for the jury to say whether plaintiff in remaining seated upon the side of the wagon as it was driven along on or near defendant's track was guilty of negligence contributing directly to her injury and no complaint is made this issue was improperly submitted. Plaintiff was not in control of the wagon. The street lights were burning and the wagon could be seen by the motorman three hundred feet away. The collision occurred very near a crossing at which cars

were required to stop. The driver was on the lookout for the car and actually did see it some two hundred feet away. The gong which plaintiff had the right to expect to hear sounded was not rung. It cannot be said as a matter of law there was such contributory negligence in this respect on plaintiff's part as to bar recovery. [Schafstette v. Railroad, 175 Mo. l. c. 154; Klockenbrink v. Railroad, 172 Mo. l. c. 687; McGauley v. Railroad, 179 Mo. l. c. 590, 591.]

4. It is argued the case should not have been submitted on the theory that defendant had the last clear chance to avert the collision since (it is said) there was no evidence as to the distance in which the car could have been stopped. It is true no witness testified directly on the point but it is also true that the motorman testified that after the collision occurred he actually stopped the car within a distance he estimated to be from seven to ten feet. Another witness testified the car stopped almost immediately. There is no evidence the car ran as much as one-fifth as far after striking the wagon as the distance between the two when the motorman first saw the wagon after crossing Forty-fifth street.

*Humanitarian Doctrine.*

It is not in every case absolutely necessary that experts be called to testify as to the distance within which the car could have been stopped. If there is evidence of any kind sufficient to support a finding that the car could have been stopped in time to avert injury after the danger was or ought to have been discovered, that will suffice, and facts like those in evidence in this case have been held to meet the requirements of this rule. [Wise v. Transit Co., 198 Mo. l. c. 557; Schmidt v. Transit Co., 140 Mo. App. l. c. 187; Richmond v. Railroad, 123 Mo. App. l. c. 498; Windle v. Railroad, 168 Mo. App. l. c. 604; Klockenbrink v. Railroad, 172 Mo. l. c. 687.] There is nothing in the cases which defendant's coun-

Farrar v. Railroad.

sel cites in this connection militating in any degree against the conclusion we have reached.

It is next insisted the physical facts preclude the application of the humanitarian rule. In support of this contention counsel selects the testimony tending to show that the collision was the result of accident or of the negligence or poor judgment of the driver in turning his horses so as to bring the wagon into contact with the car as it was passing. These theories were submitted in instructions requested by defendant and the jury did not see fit to believe this testimony. There was other evidence to show the wagon was being driven along beside and parallel to the track and was so near that its corner was struck by the projecting shoulder of the body of the car. The physical facts tend to support the theory that the force of the collision threw the rear of the wagon away from the track and that the car next struck the side of the wagon platform at the point where plaintiff's foot was hanging over it. It cannot be said the jury were required to believe that plaintiff's foot would have been caught at all if the front of the wagon was two to six feet from the side of the car when the collision occurred, since if the rear left hand corner was in contact with the car and the front left hand corner was two feet from the side of the car it seems the center of the side of the wagon platform, at which point the evidence tends to show plaintiff was sitting, must have been a foot from the car and plaintiff would not have been injured at all. There is no dispute about her having her foot crushed off between the two vehicles.

III. To the assignment that the court instructed upon theories unsupported by evidence what has been said in the preceding paragraph constitutes sufficient answer. That paragraph also disposes of the criticism of the instruction relat-

Instructions.

ing to the imputability to plaintiff of the driver's negligence, if any.

Defendant requested an instruction which the court amended and then gave, the amendment complained of being shown in italics:

"If the motorman *was running the car not over twenty miles per hour and* saw the wagon on the west side of Troost avenue, out of range of the approaching car, and in no danger of being struck thereby, then said motorman had the right to assume that the wagon would remain out of range of the car, and out of danger of being struck thereby, and that said wagon would not be placed within the range of danger of a collision with the car; and he was not required to slacken the speed of the car until it became, or should, by exercise of ordinary care on his part, have become, apparent to him that there was danger of a collision; and if the motorman used ordinary care to prevent a collision with and injury to the plaintiff after the danger became or should have become apparent to him, then said motorman was not guilty of any negligence and the plaintiff cannot recover in this suit and the jury must return a verdict for defendant company."

**Excessive Speed.**

The criticism of the amendment made is based upon the idea that without regard to the speed of the car defendant is blameless if the driver, in an effort to get farther from the track, turned his horses in such manner that the corner of the wagon swung eastward so that it came into contact with the car. Conceding the driver did so turn his horses yet it was the corner of the wagon which collided with the car and the jury might well have found that if the car had not been exceeding the ordinance rate the wagon would have been drawn the three or four necessary inches before the body of the car reached the point of collision. This instruction directs a verdict for defendant on certain facts and to have given it as requested

would have eliminated one theory of the evidence which plaintiff was entitled to have considered. The jury was unequivocally instructed that if the driver caused the collision by pulling his team to the right *after the vestibule of the car passed the rear of the wagon,* then they must find *for defendant without regard to the speed of the car.* It was also instructed to return a verdict for defendant if they found the collision was the result of accident or unavoidable casualty or any other reason save the negligence of the motorman. The court did not err in incorporating the amendment in question. Only one instruction offered by defendant's counsel was refused and that was fully covered by those given.

IV. To lay a foundation for contradicting and thus impeaching him the motorman was cross-examined at great length as to statements he made on an occasion when an attempt was made to take his deposition. It is indisputable that he appeared, was sworn and answered questions propounded and that one of the defendant's experienced stenographers took short hand notes of the questions and answers. The witness examined the transcript made by this stenographer and made several corrections but did not sign, the stenographer testifying the witness did not refuse to do so but, for lack of time, left before he finished reading the transcript and did not thereafter return. The stenographer also testified he took the notes at the time and transcribed them the best he could and that the transcript offered was the one he made from his notes. The transcript was then admitted in evidence for the purpose of impeachment and this ruling is assigned as error.

The argument is that the transcript was inadmissible because the witness did not sign it. It was not

*Impeaching Witness: Earlier Testimony.*

a deposition and was not offered as such. Without the signature of the witness or some other evidence that the statements the paper contained were made by the witness, the ruling would have been erroneous (Owens v. Railroad, 95 Mo. l. c. 183) but any statement, oral or written, relating to a material matter may, after a proper foundation is laid, be admitted for impeachment purposes. The signature of the witness would have rendered unnecessary any further proof that he gave the answers appearing in the transcript, but if their authenticity be otherwise shown such signature is not absolutely essential. It is one, but not the only, method of authenticating the statements attributed to him. A letter may be used to contradict a witness and might be shown to be that of the witness by proof of the handwriting if no signature was affixed. It is clear that the signature of the witness is not always necessary to render a writing admissible to contradict him. In this State the rule has long been that a transcript of the testimony of a witness, after being identified by the stenographer who made it, is admissible on a retrial to contradict him. [State v. Jefferson, 77 Mo. l. c. 138; State v. Rose, 92 Mo. l. c. 207; State v. Gatlin, 170 Mo. l. c. 371.] To the facts stated must be added another all important one, and that is that the witness declared on the trial that the answers set out in the transcript as corrected by him were, to the best of his knowledge, those he gave in answer to the questions propounded when the attempt to take his deposition was made. The court ruled the answers must be read as corrected. It is true the witness in the course of his subsequent testimony denied that "the deposition now as it stands" was his testimony, but it was not for the court to say plaintiff was bound by this retraction. In the circumstances there was no error in admitting the transcript.

V.   Certain remarks of the trial judge during the course of the cross-examination of the driver of the wagon are assigned as error.

The witness was being examined by defendant's counsel upon the effect upon the rear of the wagon platform when the team drawing the wagon was, as he had testified, driven sharply to the right and the front end of the wagon thus turned quickly from its course. He did not claim to have seen the effect thus turning his team had on the rear of the wagon on the particular occasion in question and, consequently, the court restricted his testimony to his opinion based upon his previous observation of the movements of the rear of the wagon under like circumstances. The court remarked that the witness must not testify "by conjecture or conclusion" and also remarked that "the witness says he knows but the court rules he does not know." To these remarks exceptions were saved. The witness subsequently made it clear he did not know in the sense that he *saw* the rear of the wagon move on that occasion and the rulings and remarks could not have harmed defendant. The court was right in refusing to permit the witness to state as a fact a thing of which his testimony left no doubt he knew nothing except as he reasoned about it in the light of previous experience. It was entirely proper to require the witness to give his opinion as an opinion. The jury might otherwise have been misled.

After the exception referred to had been saved counsel added: "We save our exceptions to the remark of the court ruling that he doesn't know as violently invading the province of this jury, and ask the court to withdraw the remarks from the jury here and now and instruct them that they must not be influenced by the remark." Thereupon the court took the witness and made it clear he did *not* see and thereby

*know* as a fact how the rear of the wagon moved at the time and then the court remarked: "Now, the ruling of the court was correct and counsel is rebuked for making a prejudicial objection in front of the jury." To this counsel saved an exception. The court again said, doubtless to make clear the ground of the ruling, that "this witness was endeavoring to give an answer to something he shows by his testimony he doesn't know." To this exception was saved and the witness began an explanation when defendant's counsel interrupted him and again announced he saved an exception in the record. The court rejoined: "You have your exception in the record. I won't have any defiance of the rulings of the court. Go ahead."

It is earnestly insisted defendant was prejudiced by this interchange. The first indication of heat or resentment, if any there was, appears in the objection that the court had "*violently* invaded the province of this jury," etc., and there is nothing to show that the gentle rebuke administered therefor was unjustified nor have we before us the manner and tone of counsel when he *twice* took an exception to the same ruling and was thereupon admonished by the court. Trial courts must be allowed wide latitude in conducting trials and in dealing with counsel who appear before them and must be left free to maintain the dignity of the tribunal over which they preside.

It may be counsel who now represents defendant takes the remarks of the court more seriously than did counsel who tried the case below. The record shows that the latter and the court during the rest of the trial treated each other with great courtesy and respect. There is no reversible error disclosed by this assignment. [State v. Teeter, 239 Mo. l. c. 483.]

VI. Finally, it is contended the verdict is excessive. The physical injuries for which the petition

Farrar v. Railroad.

Excessive Verdict: Remittitur.
prays damages are the loss of the left foot and lower part of the left leg, nervous shock and the pain and suffering incident to those. To this is subjoined the usual allegation as to mental anguish and suffering.

The injuries sustained necessitated the amputation of plaintiff's left leg at a point seven and one-half inches below the knee. The physician who attended her testified that the end of the limb had nearly but not quite healed in April after the amputation in August. Plaintiff testified she suffered from the injury at the time it was inflicted, was in the hospital four weeks, that the limb still pained her at times, in fact every time she attempted to walk, that she had been unable to go about unaccompanied and suffered mentally and was humiliated by her increased dependence.

There is no direct evidence of plaintiff's age but the evidence tends to show she was a young, unmarried woman and the failure to prove her exact age is now unimportant since she was before the jury and doubtless its members were able to approximate her age closely in considering it in connection with fixing the amount of damages. In view of reasons given in previous decisions of this court (Brady v. Railroad, 206 Mo. l. c. 518, 540; Newcomb v. Railroad, 182 Mo. l. c. 727, 728) in cases of this kind it must be held the judgment is excessive and can be sustained only to the extent of $10,000. If the plaintiff will within ten days remit $5000 as of the date of the verdict the judgment will be affirmed, otherwise it will stand reversed and the cause remanded. *Brown, C.,* concurs.

PER CURIAM.—The foregoing opinion of BLAIR, C., is adopted as the opinion of the court. All the judges concur.