PAUL TURNBOW, by ORAH TURNBOW, His Next Friend, v. KANSAS CITY RAILWAYS COMPANY, Appellant.

Division Two, April 4, 1919.

1. **JURY: Motion to Quash Panel.** If the trial court did the very thing which defendant sought to accomplish by his motion to quash the first panel of eighteen jurors summoned to try the case, he cannot on appeal complain of that action.

2. ———: ———: **No Exception.** If defendant failed to save an exception to the action of the court in overruling his motion to quash the panel of jurors selected according to certain provisions of the statutes, he cannot complain of the ruling on appeal.

3. **CONTINUANCE: No Exception.** The action of the trial court in overruling an application for a continuance will not be reviewed on appeal, if no exception thereto was saved.

4. **JUROR: Misconduct: Viewing Scene of Accident.** The ruling of the trial court that the conduct of the juror in viewing the scene of the accident where plaintiff was injured did not amount to misconduct will be deferred to on appeal unless it substantially appears that there was error in the finding. Where there was no material dispute in the evidence concerning the place of the injury, the dimensions of the street and the location of the car tracks, and they were all plainly shown by a blue-print map introduced by appellant, its interests could not have been prejudiced by the conduct of a juror who during the trial, after an adjournment for the day, went to the street crossing where the accident occurred and looked at the place—the fact not having been made known to the court until after verdict.

5. **CROSS-EXAMINATION: Impeachment: Reading from Deposition.** In reading from a witness's deposition, for the purpose of laying a foundation for his impeachment, the questions and answers which when read together develope the conflict between his testimony on the witness stand and his testimony preserved in the deposition, should be read in formulating the question to be propounded to the witness, and then opposite counsel should be permitted to interpose his objection. It is not proper to permit opposite counsel to interfere at every disconnected question and answer read from the deposition.

6. **EVIDENCE: Exhibit of Injured Leg to Jury.** The exhibition of the plaintiff child's injured limbs to the jury, after his feet had been

Turnhow v. Rys. Co.

amputated above the ankles and a physician had testified that because the bones were growing faster than the skin a further amputation would be necessary, was not error. Such evidence, when material to the issues, is admissible, subject to the exercise by the court of a sound discretion to prevent unnecessary abuse.

7. **CONTINUANCE: Amending Petition.** It is not an abuse of the court's discretion upon an amendment by interlineation of the petition, to deny to defendant a continuance, after having stated that ample time would be given defendant to obtain testimony to meet the allegation if such was desired.

8. **INSTRUCTION: To Disregard Plaintiff's Injuries.** An instruction that the jury are to first determine whether defendant was negligent and whether plaintiff's injuries were the result of such negligence, before considering the extent or character of his injuries, is one in favor of defendant, especially where the plaintiff was a three-year old child who toddled into the street and was struck by defendant's street car.

9. ———: **Broader Than Petition: Anticipated Peril.** If the petition charged that by reason of the motorman's negligence "in failing to stop said car or to control the speed thereof when plaintiff's peril near the track over which its said car passed was seen or by the use of ordinary diligence on his part could have been seen," etc., an instruction which tells the jury that if the motorman "after he might reasonably have anticipated that said child would approach said car and be injured thereby," did not, by the use of the word "anticipated," enlarge the allegation of negligence contained in the petition.

10. ———: **Common Error.** Appellant cannot be heard to complain of the use of a word in respondent's instruction which he used in his own.

11. **REMARKS OF COUNSEL: Proper Reply to Unjustifiable Insinuation.** Where counsel for appellant subtly insinuated, without justifiable ground, that the deposition which plaintiff had used to impeach his witness had been tampered with, he is in no position to question the propriety of the reply of counsel for plaintiff that he was trying to fool and mislead the jury.

12. **EXCESSIVE VERDICT: $30,000.** Plaintiff, when three years of age, had both feet so severely crushed by a street car as to render necessary their amputation just above the ankle joints, and by reason of the fact that the bones have grown faster than the skin a further operation removing two inches of the bones will be necessary; and the fact of his age and that a further operation will be necessary distinguish his case from all others. He is now able by aid of artificial limbs to walk about and go to school. *Held*, that a verdict for $30,000 should be reduced to $25,000 and interest from date of judgment.

13. ———: **Definite Rule.** No definite general rule as to what is a just amount of damages in a personal injury case can be stated. Each case must turn upon its facts.

Appeal from Jackson Circuit Court.—*Hon. Willard P. Hall,* Judge.

AFFIRMED.

*Clyde Taylor* and *L. T. Dryden* for appellant.

(1) The appellant did not have a trial before a legal, qualified jury as provided by law. Sec. 7323, R. S. 1909; State v. Austin, 183 Mo. 478; State v. Haney, 151 Mo. App. 251; Berry v. Trunk, 185 Mo. App. 495; Sec. 30, Art. 2, Mo. Constitution. (2) The court should have granted a new trial in this case because of the misconduct of the juror Jos. Rothenberg in going to the scene of the accident during the course of the trial. Easley v. Mo. Pac. Railway, 113 Mo. 236; 29 Cyc. 801, sec. 3. (3) The court erred in permitting respondent's counsel to offer certain evidence and interrogate the witness, on cross-examination, as to certain statements claimed to have been made by said witness in his deposition taken in the case. (a) This evidence was incompetent. Showen v. Ry. Co., 191 Mo. App. 292; Briscoe v. Laughlin, 161 Mo. App. 80; Ebert v. Street Railway Co., 174 Mo. App. 45; Van. Verth v. Loose, Wiles Cracker & Candy Co., 155 Mo. App. 299; Kitchen v. Railway Co., 59 Mo. 518; State v. Cooper, 83 Mo. 698; State v. Bowen, 247 Mo. 584; State v. Hughes, 71 Mo. 633; Sinclair v. Telephone Co., 195 S. W. 558. (b) The strictures placed upon appellant's counsel by the court was prejudicial to the rights of the appellant. Shepherd v. Brewer, 248 Mo. 148. (c) The respondent having offered the witness, as a witness in this case in the first trial, thereby made him his witness throught the entire case and could not therefore impeach him. Dunn v. Dunnaker, 87 Mo. 597; Helling v. United Order of Honor, 29 Mo. App. 309; State to use of Guthrie v. Martin, 52 Mo. App. 511; King v. Ins. Co., 101 Mo. App. 163; Chandler v. Fleeman, 50 Mo. 239;

Baker v. St. Ry. Co., 181 Mo. App. 392; Bigham v. Tinsley, 149 Mo. App. 467; Caldwell v. Bank, 100 Mo. App. 23; Spurgin Grocer Co. v. Frick, 73 Mo. App. 133; State Burke, 132 Mo. 372. (4) The court committed highly prejudicial error in permitting the stumps of respondents legs to be exhibited to the jury. Railway v. Clausen, 50 N. E. 680. (5) The court should have granted the appellant a continuance in this case and erred in overruling appellant's application therefor upon permitting respondent to amend his petition by interlineation, by inserting the following words, "That on account of said injuries other and further operations will be necessary to be performed on Paul Turnbow's legs." Sec. 1961, R. S. 1909. (6) The court erred in giving instruction P-1, at the instance of the respondent. Conway v. Met. St. Ry. Co., 161 Mo. App. 501; Beave v. Transit Co., 212 Mo. 331; Hufft v. Railroad, 222 Mo. l. c. 303. (7) The respondent's counsel made highly improper and prejudical statements in his closing argument to the jury, which were timely objected to by appellant and by the court overruled. Churchman v. Kansas City, 49 Mo. App. 366; Brown v. Railroad Co., 66 Mo. 588; Hayes v. The Town of Trenton, 108 Mo. 123; Haake v. Milling Co., 168 Mo. App. 177. (8) The verdict is grossly excessive and so mush so as to clearly show bias, prejudice and passion upon the part of the jury. Lessenden v. Mo. Pac. Railway, 238 Mo. 247; Yost v. Union Pacific Railway, 245 Mo. 219; Brady v. Railway Co., 206 Mo. 509; Farrar v. Met. St. Ry. Co., 249 Mo. 210; Applegate v. Railway, 252 Mo. 173; Campbell v. United Rys. Co., 243 Mo. 158; Waldhier p. Railway, 87 Mo. 48; Markey v. Railroad, 185 Mo. 364.

*John N. Southern* and *Brewster, Kelly, Brewster & Buchholz* for respondent.

(1) The jury that tried this cause was a legal jury under the statutes applicable thereto. Secs. 7323, 7324, R. S. 1909. The action of the juror in going to the scene of the accident during the course of the trial

could not have prejudiced the rights of defendant. Hoffman v. Dunham, 202 S. W. 431. (2) Sherman was placed upon the witness stand by the defendant. The questions and answers read to him from his deposition on cross-examination contradicted his testimony given at the trial, and hence were competent. The court had a right to see that the trial was conducted in an intelligible manner and that several questions could be read to the witness at one time, without an objection being made between each question, in order that the witness and jurors might get the proper connection. (3) It was proper for the court to permit the stumps of plaintiff's legs to be exhibited to the jury. Lamport v. Gen. Accident Fire & Life Ins. Co., 197 S. W. 101. (4) The court should not have granted defendant a continuance upon plaintiff amending his petition, unless he was satisfied by the affidavit or otherwise that defendant was prejudiced by said amendment and that he could not safely proceed to trial. The granting of a continuance rests in the discretion of the court. Sec. 1961, R. S. 1909. (5) Instruction C-1 given by the court of its own motion was a correct statement of the law. (6) There were no improper or prejudicial statements contained in the closing argument of plaintiff's counsel. The argument objected to by the defendant was in response to an argument made by defendant's counsel. (7) The verdict is not excessive in view of the age of plaintiff at the time he was injured; the nature of the injuries he received, the present high cost of living and the low purchasing power of the medium of exchange. Hays v. Railway, 183 Mo. App. 608; Peaslee v. Transfer Co., 120 Minn. 352; Miller v. Hampton, 201 S. W. 854; City of Kennett v. Katz, 202 S. W. 558. (8) The verdict should have been for respondent on the testimony of the motorman for appellant. Simon v. Railway, 23 Mo. 78; Turnbow v. Dunham, et al., 272 Mo. 67. (9) The verdict was for the right party under all the testimony in the case and should be affirmed. Turnbow v. Dunham, 272 Mo. 53; Cytron v.

Railway, 205 Mo. 720; Simon v. Railway Co., 231 Mo. 74; O'Keefe v. U. S. Ry. Co., 124 Mo. App. 624; R. S. 1909, sec. 2083.

WILLIAMS, P. J.—Plaintiff, an infant boy, three years of age, sues by his next friend to recover for the loss of both feet.

The injury is alleged to have been caused by the negligence of the defendant in the operation of one of its street cars upon a street crossing in the city of Independence, Missouri.

Trial was had in the Circuit Court of Jackson County, at Independence, resulting in a verdict and judgment for plaintiff in the sum of $30,000. Defendant has duly appealed.

This is the second appeal. The opinion upon the first appeal is reported in 272 Mo. 53.

No attack is made upon the sufficiency of the evidence to support a recovery. The evidence in the main is the same as upon the former appeal and is set forth in 272 Mo. at page 53 et seq. It is therefore unnecessary to restate the same here.

Plaintiff's instruction No. P-1, which was given, is as follows:

"The court instructs the jury that if you believe and find from the evidence that on the 29th day of March, 1912, Paul Turnbow was a child about three years of age and that the said Paul Turnbow wandered or went upon Lexington Street in Independence, Missouri, and upon that part thereof east of Union Street and between the curb on the south line of Lexington Street and the car tracks of the defendant, and if you further believe and find from the evidence that at said time and place the street car in question was approaching a point opposite the place where said child was in said street, and if the jury further believe and find from the evidence that said child approached said car and came in contact therewith and his feet and legs were run over by the wheels of the hind truck thereof and

crushed and injured, so that it was necessary to ampu-
tate his feet, if you believe and find from the evidence
that it was necessary to amputate them; and if the
jury further believe and find from the evidence that
the motorman operating said car saw, or, by the exer-
cise of ordinary care, could have seen the said Paul
Turnbow in said street and aproaching said car and
in or approaching a place of imminent peril, if you
believe and find from the evidence he was in said
street and was approaching said car and approaching
a place of imminent peril, in time, by the exercise
of ordinary care and with reasonable safety to the
passengers on the said car to have stopped said car
and to have prevented the injuries to said Paul Turn-
bow; and if you further believe and find from the
evidence that said motorman could reasonably have an-
ticipated that said child would be likely to approach
and come in contact with said car and be injured there-
by; and if you further believe and find from the evi-
dence that said motorman did not stop said car, after
he saw, or by the exercise of ordinary care, could have
seen said child in said street and approaching said car,
if you believe and find from the evidence he was in
said street and was approaching said car, and that
said motorman saw, or by the exercise of ordinary care
could have seen him there, and after he might reason-
ably have anticipated that said child would approach
said car and be injured thereby, if you find that he
should reasonably have so anticipated, but continued to
run said car over and upon said tracks until the said
Paul Turnbow was injured, as aforesaid; and if you
further believe and find from the evidence that it was
negligence upon the part of said motorman to so con-
tinue to run said car, if you believe and find from the
evidence he did so continue to run it, and that the
injuries to the said Paul Turnbow, if any, were caused
by said negligence of said motorman, if any, in so run-
ning said car, then your verdict should be for the plain-
tiff and against the defendant.''

Instruction No. C-1 given by the court of its own motion is as follows:

"The court instructs you that it is your duty in considering the evidence, deliberating upon and determining the facts in this case, to first decide upon the question as to whether under all the facts and circumstances there is or is not any negligence upon the part of defendant's motorman, as defined to you by other instruction. Until this question of negligence has been determined by you, you have no right to take into consideration the nature, character or extent of the alleged injuries to plaintiff, or the amount, if any, that the plaintiff is entitled to recover, because of such injuries. If the plaintiff is not entitled to recover, that is, if he has not shown to your reasonable satisfaction by the greater weight of the credible testimony upon the question of liability that he should recover at your hands, then you should not and must not in your deliberation at all consider to what extent, if any, he has been injured.

"Plaintiff was permitted to exhibit the stumps of his legs to you in order that you might see and consider them in determining the nature and extent of his injuries. You should not be influenced by the nature and extent of plaintiff's injuries in deciding whether or not defendant is liable for said injuries, as explained to you in these instructions.

"Neither passion, prejudice nor sympathy should influence you in any manner in deciding this case, for it is your sworn duty to try this case and decide it according to the evidence and the instructions."

When the case was called for trial appellant filed a motion to quash the panel of eighteen jurors, summoned to appear at the Independence Division of the Circuit Court of Jackson County, for the reason that said jury "has not been drawn, selected, summoned and qualified in the manner and way provided by law."

The panel thus sought to be quashed was summoned to appear before the said circuit court at the court

house in Independence, Missouri. This seems to have been the established practice in that regard, and had never before been questioned until the motion to quash was filed.

By reading what was said then and what is now said in appellant's brief we gather the idea that appellant's objection to the panel was that it was not a part of a large panel which had originally been summoned to appear at one of the divisions of the circuit court of said county, there to be distributed in part to each division of said circuit court (including the nine divisions sitting at Kansas City and the one division sitting at Independence) as needed for jury use in the respective divisions—(as is provided, according to appellant's contention, by Sections 7318 and 7323, Revised Statutes 1909).

The court overruled the motion to quash and thereupon plaintiff's counsel made the following request:

"Mr. Brewster: In view of Mr. Dryden's position that the eighteen jurors constituting this present panel are not properly drawn, or drawn according to law, and in view of the fact that the objection has never been made in any other case, and the fact that I represent a minor some six years of age, I am willing to try this case so that there will be no question of any kind left in the record. I therefore ask the court, in view of Mr. Dryden's motion, to send over to Kansas City and have a panel of eighteen men called to try this case."

Thereupon, and apparently with an intent to keep the above question out of the case, the court ordered the sheriff to bring twenty-three jurors from the large panel which had been originally summoned to appear at Kansas City.

After some delay twenty-three jurors from the large panel originally summoned to appear before a specified division at Kansas City were brought before the division of the court sitting at Independence.

Thereupon appellant filed a second motion to quash —this time directed at the twenty-three jurors brought from Kansas City. This second motion to quash was by the court overruled, but no exception was saved by appellants to the court's ruling thereon, the record (bill of exceptions) showing what occurred upon the overruling of the second motion to quash being as follows:

"The Court: The motion is overruled.

"Mr. Dryden (Counsel for appellant): I want to make an application for continuance."

Such additional statement of facts as shall become necessary to an understanding of the issues will be made in connection with the points discussed.

I. Appellant seems now to complain of the court's action in failing to use the original panel of eighteen jurors after he had first made an order over-ruling the motion to quash this panel.

Jury.

Appellant is certainly now in no position to complain of the action of the court in failing to use the first panel of eighteen, because this is the exact result (as to that panel) which appellant attempted to accomplish by his first motion to quash. The court (as to this first panel) having in effect done the very thing requested by appellant, appellant should not now be heard to complain.

No exception having been saved to the overruling of the second motion to quash, it follows that the questions arising upon that ruling have not been properly preserved for review.

II. It is contended that the court erred in over-ruling appellant's first motion for a continuance. Concerning this point it is sufficient to say, that appellant saved no exception to the overruling of the motion.

Continuance.

III.  Neither did the court err in refusing to grant a new trial on the ground of misconduct on the part of one of the jurors.  In the motion for a new trial appellant alleged that at some time before the verdict was rendered one of the jurors went down to the street crossing where the injury occurred.  In support of this allegation the affidavits of one of appellant's motormen and one of appellant's conductors were attached to the motion.  The affidavits state that on a certain evening after adjournment of court they saw one of the jurors standing on the street near where the accident occurred and the juror stated that "he was down looking at the place;" that the affiant did not inform appellant of this fact until after the verdict.

Misconduct of Juror.

It is extremely doubtful if this question has been properly preserved for review (See Feary v. St. Railway Co., 162 Mo. 1. c. 106 and cases cited). But be that as it may we desire to make the following observations relative to the merits of the point made.

There was no material dispute in the evidence concerning the location of the scene of the injury or of any of the dimensions of the street or of the location of the street car tracks.  A large blue print was introduced in evidence by the appellant showing this street crossing, the location of the tracks thereon, and of the adjoining and near-by buildings. · The entire situation is shown so plainly by this blue print that it would appear that little additional information would be gained by a personal view of the situation.  Under such conditions we are unable to see wherein appellant's interest could in the least have been prejudiced by the conduct of the juror.

Respondent's counsel state in their brief that the scene of the accident was necessarily passed each day by all the jurors in going to and from Kansas City and the Independence Court House.  Whether or not this was true the record before us does not disclose, but it is true that the learned trial judge who passed upon

this question was familiar with the surrounding circumstances and he was also in a better position than we to determine what if any effect such conduct may have had upon the verdict. He overruled appellant's contention in this regard, and the situation presented is not such as will warrant this court in saying that he abused a sound discretion in so ruling.

The correct rule here applicable was stated in Dysart-Cook Mule Co. v. Reed, 114 Mo. App. 296, l. c. 307, as follows: "His (the trial court's) ruling in such matters should be deferred to by an appellate court unless it substantially appears that he has erred in finding there was or was not misconduct on the part of one or more of the jurors."

IV. The appellant offered as a witness upon this trial its motorman who was operating the car that injured plaintiff. Upon the first trial plaintiff had used

**Cross-Examination.**

the motorman as his witness. It also appears that the motorman's deposition had been taken before the first trial.

Upon the present trial the motorman in his examination in chief stated that as he moved the car across the street where the injury occurred he last saw the plaintiff standing "right next to the curb."

Upon the cross-examination of this witness plaintiff's counsel asked the witness in substance if he had not testified in his former deposition that he last saw plaintiff standing between the curb and the car track a "few steps" or a "step or two" out from the curb.

The location of the plaintiff when the front end of the car passed him was a very material issue upon the trial. The closer plaintiff, an infant three years old, stood to the tracks as the front end of the car passed, the greater would be the likelihood of his coming in contact with the rear trucks of the car.

It was therefore entirely proper as an impeaching question that the witness be asked if on a former occasion he had not sworn that he last saw the boy closer to the car than he now stated.

When the plaintiff's attorney began to lay the foundation for impeaching this witness he said: "When your deposition was taken I will ask you if these questions were not asked you and if you didn't give these answers?"

Appellant's counsel objected, stating that he didn't want more than one question and answer in each question. The court then ordered plaintiff's counsel to conform to the request.

This was tried for two or three questions, the appellant interposing objections to each question. Plaintiff's counsel objected to this manner of interfering with his cross-examination and the court ruled in effect that plaintiff's counsel should first be permitted to ask his entire question and that then appellant could interpose such objections as he saw fit to the whole or any portion of the question.

Appellant's counsel objected to this, and the court said:

"Mr. Dryden, you understand I am making this ruling for the purpose of conducting this trial. Now I am going to permit the questions and answers to be read so that the jury will get the whole thing together in a connected form. Then if you want to call attention to what I have already said, permitting all the objections heretofore made to be considered as made to every single question and answer, I will permit you to move to strike out every single question and answer, but I will not, and I want you to understand it, I will not permit you to constantly interrupt the reading of this deposition." (Plaintiff's counsel was merely reading from the deposition as an aid in formulating the impeaching question.)

Appellant now contends that this statement of the court constituted reversible error. We are unable to agree with this contention.

It should be borne in mind that appellant's counsel *was not* at this time *offering in evidence a deposition but* was merely laying the foundation for impeachment,

by asking him if he made certain answers to certain questions asked him when his deposition was taken. There were nine short questions and answers which when read together developed the former conflicting testimony which plaintiff claimed the witness had given.

It is therefore apparent, that appellant's counsel had no right to constantly interfere with plaintiff's counsel in formulating his question. But the proper procedure was to first permit counsel for plaintiff to finish his entire question and then permit appellant's counsel to interpose any objection he saw fit. The ruling of the court permitted this to be done and at the close of the entire question appellant was permitted to interpose its objections.

Appellant's rights were in no manner prejudiced by the court's action in the above regard.

V. It is contended that the court erred in permitting plaintiff to exhibit his injured limbs to the jury.

One of the facts at issue in the case was whether further amputations of the injured limbs would be necessary. The surgeon who performed the operation when plaintiff's feet were amputated testified that the limbs were amputated just above the ankle joint and that due to the fact that the bone grew faster than the surrounding skin the bone now pressed against the skin at the place of amputation; that this was a frequent occurrence in cases of this kind among persons under eighteen years of age and that it would be necessary later to operate again on each leg and remove about two inches of the end of the bone. The doctor stated that the pressure of the end of the bone against the skin was plainly visible. Thereafter plaintiff's injured limbs were exhibited to the jury in order that they might see the exact appearance of the end of the amputated limbs.

Exhibit to Jury.

We have no hesitancy in saying that the exhibition of the injured limbs to the jury did not constitute error.

The general rule is that evidence of this kind is admissible, when material to the issues, subject, however, to the right of the trial court in the exercise of a sound discretion to prevent unnecessary abuses in the offering of such evidence. [2 Wigmore on Evidence, sec. 1158 and numerous cases therein cited. See also cases cited in 5 Wigmore on Evidence (2' Ed.), sec. 1158; 17 Cyc. 292.]

VI. During the trial plaintiff was permitted to amend his petition by interlining the following words: "That on account of said injuries other and further operations will be necessary to be performed on Paul Turnbow's legs." Appellant thereupon filed a motion for a continuance alleging surprise, etc. The court overruled the motion for continuance but at the time stated: "I think under the allegation of the petition as to permanent injuries, it was entirely competent to introduce the evidence of further operations. *I will say this, Mr. Dryden* (Appellant's counsel), *that if you want the opinion of other physicians I will give you ample time in which to get the testimony of other physicians as to the necessity of further operations.* The application for continuance is overruled." (Italics ours.)

*Amending Petition.*

Appellant's reason for wanting a continuance as shown by the wording of his motion was in order to have time to "procure evidence to show that no such amputations or operations will be necessary." There is no showing in this record that the time which the court offered to grant appellant was not sufficient for this purpose and we are therefore unable to say that the trial court abused its discretion in the matter. [Peterson v. Railway, 211 Mo. 498, l. c. 516-7.] The point is therefore disallowed.

VII. We find no error in the giving or refusing of instructions.

Instruction C-1 (see instruction in statement of facts), given by the court of its own motion, was favorable rather than prejudicial to the appellant. We find corroboration of this view in the conduct of appellant's **Instructions.** learned counsel upon the trial. In his address to the jury (which is set forth in the bill of exceptions herein), we find that at that time he thought well enough of this instruction to read it to the jury as a part of his address. We concur with appellant's first impression of this instruction and therefore disallow his present contention. Whether the plaintiff (had he lost below) could have based error upon this instruction we need not now pause to inquire.

Plaintiff's instruction P-1 (see statement) did not enlarge the allegations of negligence contained in his petition, as contended by appellant. Appellant contends that the word "anticipated" as used in the instruction enlarged the allegations of the petition. The petition among other things alleged "that by reason of the said negligence of defendant's agents and employees in failing to stop said car or to control the speed thereof when plaintiff's peril near the track over which its car passed was seen or by the use of ordinary diligence on their part might have been seen" etc. This was sufficient in scope to include the meaning conveyed by the word "anticipated" as used in the instruction. But even though appellant's theory, that it enlarged the allegation of the petition, be conceded *arguendo* as being correct, yet by use of the conjunction "and" in the instruction the only effect of inserting the portion, now attacked, would be to place an additional burden upon the plaintiff, of which the appellant would have no just ground for complaint.

Another reason why the use of the word "anticipated" in the plaintiff's instruction would not be error in the case at bar is, that appellant used the same word and meaning in its instructions.

Further complaint is made of the court's action in refusing other instructions requested by the ap-

pellant. It would serve no useful purpose to copy the several instructions into this opinion. We have carefully examined the same and are clearly of the opinion that in so far as any of the appellant's refused instructions contained correct statements of the applicatory law the same had been fully covered by appellant's instructions which were given.

VIII. Appellant contends that the respondent's counsel made improper and prejudicial statements in his argument to the jury. Appellant's counsel in arguing the case to the jury, after mentioning the fact that the motorman had denied that he had testified in the manner shown by his deposition, called attention to the fact that the pages of the motorman's deposition from which respondent's counsel had read did not correspond with the pages of the copy which he (appellant's counsel) had kept. Respondent's counsel thereupon asked appellant's counsel if every question he had read to the witness were not also in the copy kept by appellant. To this appellant's counsel replied: "I don't know. I didn't follow you. Now gentlemen (addressing the jury) that (the fact that the pages in the two copies of the deposition did not correspond) is a *mighty singular thing.*" (Parenthesis and italics ours.)

In reply to appellant's argument on the above point respondent's counsel (addressing the jury later), said: "Now gentlemen, let's be fair. A lawyer who tries to fool a jury makes the greatest mistake that can be made by a lawyer any time anywhere. Dryden knew as you saw when I was reading that deposition, Dryden kept interrupting me saying: 'What page are you reading from? I can't find the page: they seem to be numbered differently.' I said 'I will find it for you.' You saw me find it for him, you saw me point out the page. You saw him bow his head, and say, 'Yes, I have it now,' and he made no objection that it was not in his deposition, and it was all in the deposition

that he had. Then why try to fool and flimflam and bamfoozle a jury of Jackson County men? When lawyers get it into their heads that that is the way to try a law suit, to try to fool a Jackson County jury, just then will they learn the true purpose of their profession.''

We are of the opinion that appellant is in no proper position to challenge the propriety of the above argument. It was provoked in a way by the argument of its own counsel in subtly insinuating that there was something wrong with the deposition. From the evidence we find no foundation for the insinuation that the deposition had been tampered with, and the above argument which was made in reply to such insinuation did not, we thing, go beyond the bounds of legitimate argument.

IX.   It is contended that the verdict is excessive.

The evidence shows that plaintiff, when three years of age, had both feet so severely crushed under the wheel of a street car as to render necessary the amputation of both feet just above the ankle joints, and that later (by reason of the fact that the bone has **Excessive Verdict.** grown faster than the skin) it will be necessary to perform further operations removing about two inches from the ends of the bone in each leg. From the evidence it further appears that plaintiff is now able, with the aid of artificial limbs, to walk about and go to school, but that the use of the artificial limbs causes more or less pain and chafing of the limbs.

We have carefully reviewed the authorities in this State, as well as the many authorities cited in L. R. A. (N. S.) 1915F, at page 308 et seq., upon the question of excessive verdicts. A review of the authorities will at once convince the researcher that no definite general rule can be stated. Each case must, to a very large degree, turn upon its own facts.

In the case of Farrar v. Railroad, 249 Mo. 210, l. c. 227, the injured person was a young married woman.

The injury sustained was the loss of a portion of the left lower leg and foot. The verdict was by *remittitur* ordered reduced by this court to the sum of $10,000.

In the case of Waldhier v. Railway Co., 87 Mo. 37, the injured person was a young man seventeen years of age. The injury sustained was the loss of the "lower extremities of both legs." · The verdict was ordered reduced by *remittitur* to the sum of $20,000.

In the case of Markey v. Railroad, 185 Mo. 348, l. c. 364, damages for the loss of both legs below the knees by a man forty-five years of age were, by *remittitur,* ordered by this court reduced to the sum of $20,000.

In some of the cases reviewed the court in arriving at the amount of *remittitur* has laid stress upon the fact that the instruction on the measure of damages told the jury that if they found for plaintiff they might allow damages not exceeding a certain amount (usually the amount asked in the petition). [Applegate v. Railroad, 252 Mo. 173, l. c. 202; Lessenden v. Railroad, 238 Mo. 147, l. c. 264.]

In the case at bar, however, the instruction on the measure of damages does not contain the feature which has been criticised in the above line of cases.

We find no case dealing with the exact situation we now have under review. The fact that the plaintiff was only three years old at the date of the injury and the further fact that an additional surgical operation will have to be made distinguish this case from the Waldhier and Markey cases, supra, and from any other case which this court has been called upon to decide.

The age of the injured person and the necessity of further surgical operations are undoubtedly elements which enter into the computation of the amount of damages, and while we are of the opinion that those elements in the present case would justify a recovery of a greater amount than was permitted in the Waldhier and Markey cases, supra, we are still of the opinion that the additional features of the present case would

not justify a recovery of $10,000 more than was permitted to stand in those cases.

The whole matter carefully considered we are of the opinion that the present verdict for $30,000 is excessive by $5000.

If, therefore, the plaintiff will, within ten days, enter a *remittitur* of five thousand dollars, the judgment will stand affirmed in the sum of $25,000; both the *remittitur* and affirmance to be as of the date of the original judgment; otherwise the judgment will be reversed and the cause remanded for new trial. All concur.